Richard McMahon, Defendant in Error, *vs.* Louis S. Owsley, Plaintiff in Error.

*Opinion filed October 28, 1913.*

1. Master and servant—*master is not an insurer of the competency of his servants.* It is the master's duty to exercise ordinary care in the selection of his servants and to employ such as are fairly skillful and competent, in order that other employees may not be endangered by the misconduct of persons not possessed of reasonable qualifications, but he is not an insurer of the competency of his servants.

2. Same—*when a servant cannot recover because of incompetency of another servant.* While the danger resulting from the incompetency of fellow-servants is not one of the usual risks assumed by a servant by his contract of hiring, yet where a servant, knowing the incompetency of another servant, continues to work with him he assumes the risk of injury resulting from such incompetency, and the master is not liable.

3. Same—*when a conductor assumes risk of incompetency of a person acting as motorman.* A conductor on a street car who

knows the incompetency of the night foreman at the car barns to act as motorman, and who protests against his acting as motorman but nevertheless accompanies him on the car instead of insisting upon a competent motorman being furnished, assumes the risk of the incompetency of such foreman.

4. Same—*when rule permitting recovery when a servant is injured in obeying order of foreman acting as fellow-servant does not apply.* The rule permitting a recovery of damages by a servant injured while obeying an order of his foreman, who at the time was acting as a fellow-servant, does not apply where the order relates to the performance of a usual duty of the servant, which is not connected with any concealed danger known to the foreman and unknown to the servant. (*Norton Bros.* v. *Nadebok,* 190 Ill. 595, and *Roebling Construction Co.* v. *Thompson,* 229 id. 42, explained.)

5. Same—*when a street car conductor cannot recover for injuries resulting from a motorman's negligence.* Where the night foreman at the car barns is acting as motorman he is a fellow-servant of the conductor on the car, and the fact that at the time the conductor was thrown out of the front vestibule, due to the foreman's improper handling of the car, he had stepped out there to hand the foreman his trip-sheet, which the foreman had ordered him to make out and which was a regular duty for the conductor to perform, does not entitle the conductor to recover damages.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

ZANE, MORSE, McKINNEY & McILVAINE, for plaintiff in error.

H. J. TONER, and DAVID K. TONE, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Richard McMahon recovered a judgment in the superior court of Cook county for $6250 against Louis S. Owsley, receiver of the Suburban Railroad Company, for personal injury. The Appellate Court for the First District affirmed

the judgment below, and the record has been brought to this court by *certiorari*.

At the close of defendant in error's evidence, and again at the close of all the.evidence, plaintiff in error requested the court to direct a verdict in his favor, which the court refused, and the action of the court in this regard is relied upon as the principal error for a reversal.

The amended declaration upon which the case was tried contained four counts. The first, second and fourth counts are substantially the same, and charge that plaintiff in error permitted Andrew Johnson to discharge the duties of motorman and that said Johnson was incompetent, unskillful and inexperienced in that line of work, and that through the incompetent and careless operation of a car by the said Johnson the defendant in error was thrown from the car and injured. The third count of the amended declaration alleged that it was the duty of plaintiff in error to establish and maintain a light as a signal or warning at the intersection of Fifty-second avenue and Twenty-second street, and that a light previously maintained at said place had been negligently removed, and that in consequence of the darkness the accident happened which caused the injury. There is no serious contention on behalf of defendant in error that the judgment below can be sustained under the third count of the amended declaration. The right of recovery, if any exists, must rest upon the case stated in the other three counts of the declaration.

The material facts established by the testimony are as follows: Defendant in error was a conductor on an electric railroad owned by the Suburban Railroad Company but at the time of the accident it was being operated by plaintiff in error as receiver. The Chicago terminus of the railroad line was at the corner of Forty-eighth avenue and Harrison street. On the evening of September 1, 1907, defendant in error was a conductor on a car which ran from LaGrange to the Chicago terminus. The car barns were

located at the corner of Harlem avenue and Twenty-second street. These barns were on the line over which the car in charge of defendant in error passed in its trip from La-Grange to the Chicago end of the line. The car in charge of defendant in error reached the car barns about midnight. Here the regular motorman left the car and went to his home. A man by the name of Whitsel was in charge of the car barns during the day. It was his duty to give instructions in regard to the operation of cars from the barns and he was a general foreman over all the men whose cars ran into the barns. Whitsel went off duty at six o'clock in the evening and Andrew Johnson took his place and was in charge of the barns during the night. He seems to have had the same powers during the night that Whitsel exercised during the day. When the motorman on defendant in error's car left it at the barns there was no other regular motorman there to take his place. The car was due to run down to the Chicago end of the line (a distance of four miles) and return to the barns, at Twenty-second street. Johnson, the night foreman, took charge of the car as motorman, for the purpose of running it down to the end of the line and back. Defendant in error testifies that he protested against Johnson running the car and told him he was not a motorman and did not understand how to run the car, but that Johnson insisted he would show him that he could run the car properly. Johnson contradicts this statement, and says that defendant in error made no objection to his operating the car. All the passengers left the car at the corner of Forty-eighth avenue, and the only persons left on the car on its return trip to the barns were the motorman and conductor. It appears that there were two routes, by either of which the return trip to the barns could be made. Defendant in error testified that before the car was started on the return trip Johnson said, "We are going down Fifty-second street this trip." Defendant in error said, "Why not go on Harrison street?" Defendant in error testi-

fied that the Fifty-second avenue route was rough between
Sixteenth and Twenty-second streets. Johnson denies that
there was any conversation in regard to the line over
which the car should return to the barns. It appears from
the evidence that the nearest point the car would pass de-
fendant in error's home was at the corner of Austin ave-
nue and Twenty-second street, which is about one mile and
a half east of the car barns and that distance nearer the
home of defendant in error than the barns were. The ex-
pectation was that defendant in error would leave the car
at Austin avenue and go home. The return trip of the car
was made at a speed of about twenty-five miles an hour.
There were no passengers to get on or off the car and
no stops were necessary. The car ran west on Harrison
street, turned into Fifty-second avenue and slowed down at
Twelfth street for a crossing. It ran to Sixteenth street
and stopped. At this point the car had to cross a railroad
track. Defendant in error got off the car to see if the rail-
road crossing was clear. Finding it clear he signaled John-
son to come on, and as the car crossed the track he stepped
on the front platform and stood near Johnson. Johnson
asked him if he had his trip-sheet made out, and he said he
had not. He testifies that Johnson said, "You go in and
make it out right there,—make out the trip-sheet; Mr.
Whitsel says he wants to put you on for a big day to-
morrow, and I want you to make the statement out and
come out again." Defendant in error then went into the
car and went to the rear, made out his trip-sheet, and re-
turned to the front end of the car, opened the door and
went out into the vestibule and took a position by the side
of Johnson. He testifies that he asked Johnson whether he
was ready for the money and the trip-sheet, and upon being
answered in the affirmative he gave Johnson two bills and
the trip-sheet, and then put his hand into his pocket to get
the additional sum in change which was required to balance
up his trip account. At this time Johnson exclaimed, "Look

out!" and the car, then running at the rate of about twenty-five miles an hour, struck the switch curve at the corner of Twenty-second street and Fifty-second avenue and defendant in error was thrown across the vestibule and out through the open door at the left-hand side, falling upon the track and receiving the injuries complained of. He was assisted by Johnson back to the car and brought to the car barns. Johnson gives a somewhat different version of the transaction. He says that defendant in error came out on the front platform when he was slacking up the speed of the car by shutting off the power at Twenty-second street, and that defendant in error poked him in the ribs and offered him the money and trip-sheet, and that he took his hand off the brake to get the money, which caused him to lose control of the car.

In disposing of the legal questions arising on the record we must assume that all facts which the evidence fairly tends to prove have been established by the judgment of the Appellate Court according to the contention of defendant in error. As to the competency of Johnson as a motor-man the evidence is sufficiently conflicting to require the submission of that question to the jury, therefore it must be regarded in this court as an established fact that he was incompetent. Assuming the incompetency of Johnson as an established fact in the case, and that plaintiff in error knew or by the exercise of reasonable care might have known of such incompetency, is defendant in error, as a matter of law, entitled to recover, in view of the other undisputed facts in the record?

The master is not an insurer of the competency of his servants. The duty is imposed upon him to exercise ordinary care in the selection of his servants and to employ such as are fairly skillful and competent, in order that other employees may not be endangered by the misconduct of persons not possessed of such reasonable qualifications. (Barrows on Negligence, sec. 38, and cases there cited.) If the

master fails in the performance of this duty ánd an injury results to a co-employee in consequence of the negligence or incompetency of such servant, it may be said, generally, that the master is liable. (*Chicago and Northwestern Rail-way Co.* v. *Swett,* 45 Ill. 197.) The danger arising from the incompetency of fellow-servants is not one of the ordinary and usual hazards which a servant assumes by his contract of hiring. (*United States Rolling Stock Co.* v. *Wilder,* 116 Ill. 100; *Consolidated Coal Co.* v. *Haénni,* 146 id. 614.) While the master's negligence in the employment of incompetent servants is not ordinarily one of the usual risks of the employment which the servant assumes by his contract of hiring, still where the servant continues to work with such incompetent servants after he becomes aware of their incompetency, any injury resulting to him through the negligence or unskillfulness of such incompetent servants is an injury arising from an assumed danger, for which the master is not liable. (*Klofski* v. *Railroad Supply Co.* 235 Ill. 146.) Assuming Johnson to be incompetent as a motorman, the evidence of defendant in error conclusively shows that he knew as much about his qualifications as anyone else. He admits in his testimony that he knew Johnson was not an experienced motorman and says that he protested against his taking the car out before it left the barns. In addition to this, he shows by his testimony that he was entirely familiar with the duties that Johnson was in the habit of performing about the car barns. He had been running in and out of the barns a sufficient length of time to give him a full opportunity to know what Johnson's qualifications were. When Johnson proposed to take charge of the car as motorman, defendant in error, knowing he was incompetent and inexperienced, had the privilege of refusing to go out on the car with him and to insist that plaintiff in error furnish him with a competent motorman, in accordance with his legal duty in that respect. We see no escape from the conclusion that de-

260 — 4

fendant in error must be held to have assumed the risk
of injury that might occur through the incompetency of
Johnson when he voluntarily, with full knowledge of the
facts, continued on the car with him.

Again, Johnson and defendant in error, while engaged
in the joint running of this car,—one as conductor and the
other as motorman,—were unquestionably fellow-servants.
As a general proposition, defendant in error concedes that
in his capacity as motorman Johnson was his fellow-ser-
vant, but it is argued that Johnson being a vice-principal
and having the authority to control and command defend-
ant in error, the order given to defendant in error by John-
son to make up his trip-sheet and bring it out to the front
vestibule of the car was a concurring proximate cause of
the injury, and the rule is invoked that the master is not
exempt from liability where the injury results from the neg-
ligence of the vice-principal as such, in combination with
the negligence of such vice-principal in the capacity of a
fellow-servant, and the cases of *Norton Bros.* v. *Nadebok,*
190 Ill. 595, and *Roebling Construction Co.* v. *Thompson,*
229 id. 42, are relied on as establishing the rule contended
for. The cases referred to fully sustain the rule. In the
*Nadebok case* the vice-principal had commanded the ser-
vant to put his hand into a machine and take out a "catch,"
and while the servant's hand was in the machine, and was
known to be there by the vice-principal, he by his own act
started the machinery, which resulted in an injury to the
servant's hand. In that case the vice-principal, Banning,
had authority to command and it was the duty of the in-
jured servant to obey. He ordered the servant to put his
hand into a dangerous place. In giving this command
he was a vice-principal and represented the master but in
starting the machine it was contended that he was a fellow-
servant, but it was held that the injury having resulted from
the negligent command given as vice-principal, in conjunc-
tion with his negligent act in starting the machine, the

master could not escape liability on the ground that the starting of the machine was the act of a fellow-servant, and the same doctrine has been re-affirmed in numerous other cases. (*Slack* v. *Harris,* 200 Ill. 96; *Chicago and Eastern Illinois Railroad Co.* v. *Driscoll,* 207 id. 9; *Consolidated Coal Co.* v. *Fleischbein,* 207 id. 593; *Illinois Southern Railway Co.* v. *Marshall,* 210 id. 562.) In the case of *Roebling Construction Co.* v. *Thompson, supra,* the facts were as follows: An elevator was being used for hoisting concrete to the fifth floor of a building. The concrete was loaded in wheelbarrows and rolled toward the elevator and hoisted by steam to the fifth floor. The loaded wheelbarrows were then rolled off the elevator and dumped and the empty barrows returned to the elevator to be taken down and re-loaded. The elevator was operated on its down trips by signal given by means of a bell rope from the fifth floor, which was connected with a bell in the basement. A number of empty wheelbarrows had accumulated on the fifth floor, in front of the elevator, when Morrison, the foreman, ordered the injured servant and another to "double up" the barrows,—that is, to place two or more tiers of wheelbarrows on the floor of the elevator. This was not the usual way of sending the barrows down. The injured servant was peremptorily ordered by the foreman to thus load the elevator with the empty wheelbarrows. In doing so he placed one foot on the elevator and the other on the floor. While he was in this position the foreman pulled the cord and gave the signal for the elevator to go down, without giving the servant any notice that the elevator was about to be lowered. It was not the duty of the foreman to give the signal to lower the elevator. That service was ordinarily performed by a boy, but on the occasion of the accident Morrison, the foreman, pulled the bell cord. The contention there was that Morrison, in pulling the bell cord, was a fellow-servant, but it was held that in view of the negligent order which he had given to double up the

barrows, which made it necessary for Thompson to place one foot upon the elevator, the fellow-servant rule had no application to the case.

It will be noted that in all of the above cases there was an element of danger connected with the carrying out of the order delivered which the vice-principal ought to have foreseen, and it is this element of danger connected with obedience to the command that gives the order its negligent character. A servant is presumed to accept responsibility for an injury which is caused by one of the ordinary and usual risks of the employment, and negligence cannot be predicated upon an order which merely exposes him to such a risk. (Labatt on Master and Servant, sec. 437.) In other words, an order by the master to the servant to do some act or perform some service which was included within the general scope of his duties under his contract of hiring could not ordinarily be regarded as a negligent order which would absolve the servant from the assumption of the ordinary and usual risks incident to the execution of the order given. The mere circumstance that an order is given in such case does not conceal dangers that were open and obvious before, or render involuntary the assumption of a risk which was incident to and a part of the servant's regular work and which he must be held to have contemplated and assumed when he engaged in the service. (*Wilson* v. *Tremont and Suffolk Mills,* 159 Mass. 154; 34 N. E. Rep. 90; *Swiercz* v. *Illinois Steel Co.* 231 Ill. 456.) If it be conceded that Johnson, as foreman, had the authority to request or command the defendant in error to go into the car, make up his trip-sheet and bring the same and the money to him on the front vestibule of the car, and that it was the duty of the defendant in error to obey this request, still there is wanting that element of danger in obeying this command necessary to give it the character of a negligent order. It is well known that conductors upon street cars, as well as passengers, frequently

stand upon the platforms or vestibules of cars, and it has never been held, so far as we are advised, that it is negligence either in the employees or passengers to be or stand upon the vestibule of a moving car. The ordinary and usual duties of a conductor of a street car require him to frequently be upon the vestibule of the car in his charge. It would be going much farther than this court has ever gone, to hold that it is negligence in a conductor of a street car to go to the front or rear vestibule of the car in the discharge of his usual duties. If defendant in error of his own initiative had made up his trip-sheet and gone to the front vestibule to deliver it to Johnson in the discharge of his duty and preparatory to leaving the car for the night, could it be said, either as a matter of fact or of law, that he was guilty of such contributory negligence that he could not recover for an injury if he had been thrown from the car by reason of a defective track or some other act of negligence for which the plaintiff in error was responsible? Such conclusion, it seems to us, could not be sustained. If under these circumstances defendant in error would not be guilty of contributory negligence, then how can it be said that the order of Johnson to do the thing which he might properly have done without such order was a negligent order? The injury here cannot, therefore, be said to be the result of a negligent order of the vice-principal in combination with his negligence as a fellow-servant. There was no negligent order in this case with which the negligence of Johnson, as fellow-servant, could combine to produce the injury. This case cannot be controlled by the rule laid down in the *Nadebok* and *Thompson cases, supra.*

Our conclusion upon the whole case is that the court erred in not directing a verdict in favor of plaintiff in error, first, because the evidence shows that the defendant in error knew, before the injury, of the inexperience and incompetency of Johnson as a motorman and voluntarily elected to go out on the car with him; second, Johnson

and defendant in error were fellow-servants, under both branches of the rule, at the time of the injury, which resulted proximately from the negligence of Johnson in not properly running the car.

The judgments of the superior court of Cook county and of the Appellate Court for the First District are reversed and the cause remanded to the superior court of Cook county.                      *Reversed and remanded.*