[No. 20252. Department Two. March 15, 1927.]

LENA JACOBSEN, as *Administratrix of the Estate of Louis Jacobsen, Deceased, Appellant,* v. DEFIANCE LUMBER COMPANY, INCORPO-RATED, *et al., Respondents.*[1]

[1] JUDGMENT (41)—BY DEFAULT—EXCUSES—MISTAKE AND EXCUSABLE NEGLECT. Where there is strong showing as to a meritorious defense to an action against a corporation, a default judgment should be set aside on terms, where the failure to appear was due to a mistake of the officer served in assuming that the defense would be put in by another thought to be a party, who had sole control of the business.

[2] MASTER AND SERVANT (97, 103)—ASSUMPTION OF RISKS—INCOMPETENT FELLOW SERVANTS—CONTINUING WORK WITHOUT PROTEST. An experienced longshoreman assumes the risk of the negligent operation of a winch by an incompetent winch driver, where he had frequently worked under and observed his incompetence, which was well known to him and a matter of reputation, and yet continued the work without any complaint or protest.

[1]Reported in 253 Pac. 1088.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered March 27, 1926, upon a directed verdict in favor of the defendants, in an action for wrongful death. Affirmed.

*Douglas T. Ballinger,* for appellant.

*Huffer, Hayden, Merritt, Summers & Bucey,* and *Oakley & Thompson,* for respondents.

TOLMAN, J.—Appellant sued to recover damages for the wrongful death of her decedent, which it was alleged occurred in the loading of the steam schooner "Pacific," afterwards known as the "Barbara C.," at the port of Everett, on January 15, 1923. A large number of defendants were impleaded who were alleged to be the joint owners of the vessel, among them being the Defiance Lumber Company, a corporation, which was described in the complaint as having its principal place of business at Tacoma, but doing business in Snohomish county. Summons was served upon an officer of this corporation at Tacoma, in Pierce county, and no appearance having been made for it, forty-four days after service a motion for default was made, formal proof was offered, and thereupon findings of fact and conclusions of law were made and a judgment for $15,000 was entered against the lumber company. Promptly thereafter a motion was made to set aside the default and vacate the judgment, which motion was granted on terms that were met. The lumber company answered, and in due time the case came on for trial, as to all of the defendants then in the case before a jury. At the conclusion of plaintiff's case, on motion of the defendants, a directed verdict in favor of the defendants was ordered. A motion for a new trial was interposed and denied, judgment was entered for the

defendants on the verdict, and from that judgment the plaintiff has appealed. The errors assigned present for review the action of the trial court in vacating the default judgment against the Defiance Lumber Company and in directing a verdict.

[1] The motion to set aside the default was based upon two grounds: (1) because the lumber company's failure to appear was occasioned by mistake, inadvertence, surprise and excusable neglect, and (2) because the lumber company had never transacted business in Snohomish county, had no agent therein upon whom process could be served, and the superior court for Snohomish county had no jurisdiction over the person of the lumber company; but the lumber company offered, if its motion was granted, to submit itself to the jurisdiction of the court, and afterwards did so.

The showing on behalf of the lumber company was by affidavits, the principal one being that of a Mr. Doud, the secretary-treasurer of the company and the officer upon whom the summons was served. From this affidavit, it appears that one W. R. Chamberlain was the managing owner of the vessel here involved, the lumber company owning but an undivided 8/100 interest, the remaining 92/100 being owned by twenty-eight other persons, firms and corporations, residing and doing business at various places on the Pacific coast; that Chamberlain had sole charge of the vessel and its operations, employed the crew, attended to the chartering, etc., and that the lumber company had no knowledge of the business done by the vessel except only as it received financial statements from time to time showing what had been earned by the vessel. Doud says that he observed from the papers served upon him that substantially all of the owners had been made parties

defendant, among them being one C. A. Chamberlain: that he supposed this to be W. R. Chamberlain, who had entire charge of the vessel and sole knowledge of its affairs, and he relied upon W. R. Chamberlain to make a defense on behalf of all of the owners, including the lumber company, and for that reason he failed to employ attorneys to defend on behalf of the lumber company. The other affidavits make a very strong showing of a defense to the action, which is the most important fact to be considered in such a case.

The reason for the failure to appear is of far less importance than the fact that the default, if allowed to stand, will work an injustice. The purpose of the courts, whether their judgments be entered by default or after a trial, is always to do justice as nearly as may be, and no technical failure to appear in time, if that failure be not wilful, would justify a court in permitting to stand a judgment which it is satisfied is unjust. We do not mean by what is now said that the rules may be disregarded with impunity. Far from it. The courts will seldom relieve one who has wilfully disregarded the command of a summons duly served, and always the burden is on the party seeking the relief to show that his failure was not so negligent as to be wholly inexcusable and that he has a good defense, in whole or in substantial part. The stronger the probability of such a defense, the less will be required on the question of the excusability of his neglect. Moreover, the court can and should impose such terms as may appear to be proper under all of the circumstances. We are satisfied that this showing was sufficient to justify the court in setting aside the default upon the first ground, and therefore make no inquiry as to the second ground of the motion.

[2] The deceased was employed as a longshoreman

stowing lumber on the vessel. The lumber was brought on board by the use of winches, operated by a member of the vessel's crew. The charge of negligence is twofold: first, that the winch driver was inexperienced, unskilled and incompetent, to the extent of making the place of work highly dangerous and rendering the vessel unseaworthy; and, second, that the winches were defective. No evidence was offered to sustain the latter charge; and for all practical purposes it was abandoned. There was ample evidence from which the jury might have found that the deceased met his death by reason of the improper operation of the winches. There was also sufficient evidence to go to the jury on the question of the winch operator having for a long time borne the reputation of being careless, reckless and incompetent, so as to bring knowledge of the fact home to the officers of the vessel who were responsible for his having continued in that position. But, unfortunately for the appellant, her witnesses went too far in that direction and also established, without dissent or conflict in their testimony, that the deceased also knew of the winch driver's incompetency, and therefore assumed the risk.

It appears that the deceased was an experienced longshoreman, had himself at times operated winches, that he had worked on this vessel on many previous occasions and under the same winch driver. Witness after witness, upon cross examination, iterated and reiterated that the deceased was a very competent man in his line of work, that he had worked upon this vessel on many previous occasions, and under the same winch driver, that he knew and must have known of the winch driver's incompetency, and that he chose to continue in the work without protest or any request for the removal of the incompetent winch driver. A portion

of the cross examination of one witness will fairly illustrate what all who were asked said upon the subject.

"Q. Do you know how many trips into this port this ship made with this same winchman on her? A. At that time that 'Pacific' used to come here regularly, anyway — Q. About eighteen or twenty days between trips? A. Yes, about that; about eighteen or twenty days between trips. Q. You say about eighteen or twenty days. She would be in port two or three or four days, wouldn't she? A. Yes. Q. And you gentlemen would not only work down there during the regular eight hours but you would work over-time? A. Sometimes, yes. Q. Under this same winch driver? A. Yes, sir. Q. So that if he was considered,—if this winch driver was considered negligent and incompetent you would know it from the time you started in with him up until Mr. Jacobsen's death, wouldn't you? A. Yes. Q. And any ordinary longshoreman would know the same thing, wouldn't he? A. Yes. Q. And you would know it so much that you say there was a reputation, was there? Is that right? That he had a reputation of being a careless man, you knew that? A. He was known among the men to be careless; yes. Q. Mr. Jacobsen must have known it, didn't he? A. I guess he did."

There was nothing hidden, concealed or unusual about the particular operation of the winches which caused the death of the decedent. It was just such another act as the witnesses unite in saying that this driver constantly performed and had an established reputation for performing, and just such as the evidence shows the deceased might have expected or anticipated. There was no dispute and there is no room for reasonable minds to differ. Therefore, the trial court was right in directing a verdict for the defendants. *Primley v. Elbe Lumber etc., Co.*, 53 Wash. 687, 102 Pac. 763; *McMahon v. Owsley,* 260 Ill.

43, 102 N. E. 1010, L. R. A. 1916F, 1208, and note following.

The judgment appealed from is affirmed.

MACKINTOSH C. J., BRIDGES, PARKER, and ASKREN, JJ., concur.