[No. 2422-1.   Division One.   March 31, 1975.]

COMMERCIAL COURIER SERVICE, INC., et al, *Respondents*, v. HAROLD MILLER et al, *Appellants*.

---

[12]Also, the general penalty provisions of RCW 46.64.050 are available.

*Donald W. Marken,* for appellants.

ANDERSEN, J.—

### FACTS OF CASE

Plaintiffs sued defendant for stock fraud. Defendant not appearing, plaintiffs obtained a default judgment. Following entry of that judgment, defendant then appeared and moved to vacate the judgment. It is from a denial of that motion that defendant brings this appeal.

This suit was commenced on March 15, 1973, by Commercial Courier Service, Inc., and Dale L. Buchmann as plaintiffs. It was brought against Harold Miller and wife. The defendants are referred to herein in the singular as a matter of convenience since only Mr. Miller was directly involved in the matters which are the subject of this suit.

The complaint alleged that on December 1, 1972, Mr. Miller sold Mr. Buchmann 51 percent of the stock in Commercial Courier Service, Inc., and received in payment therefor the sum of $8,000 in cash and $17,000 in promissory notes. The defendant acknowledges this.

The complaint contained two principal allegations of wrongdoing in connection with the sale. It charged that the defendant was guilty of misrepresentations and failure to

disclose a pending lawsuit and complaints to the Attorney General for the State of Washington which had been filed against the corporation. It also charged that defendant had no interest in or right to convey the stock.

The relief asked by the plaintiff Buchmann was that his $8,000 and promissory notes be returned and he be awarded $1,000 in attorneys fees plus interest and costs. The plaintiff Commercial Courier Service, Inc., asked that defendant be adjudged to have no interest in the corporation.

On the date suit was filed, a temporary restraining order and order to show cause was also obtained from the Superior Court for King County. That order restrained defendant from negotiating or transferring the notes. It also required him to appear in court on March 26, 1973, and show cause why the order should not be made permanent.

On the day following commencement of the suit, defendant was served with a summons and complaint as well as with a copy of the temporary restraining order and order to show cause. The language of the summons, which becomes pertinent, reads in part:

> You Are Hereby Summoned to appear within twenty (20) days after service of this Summons upon you, if served within the State of Washington, and within sixty (60) days after said service if served outside the State of Washington, . . . and, in case of your failure so to do, judgment will be rendered against you according to the demands of the Complaint.

On March 26, 1973, when the defendant failed to appear for the show cause hearing, plaintiffs obtained an order restraining his negotiation and transfer of the notes during the pendency of the litigation.

No appearance having been made by the defendant within 20 days, an order of default was then entered on April 13, 1973. On May 7, 1973, the court heard testimony and entered its findings of fact and conclusions of law and a judgment. These were in accordance with the allegations and prayer of plaintiffs' complaint.

On June 5, 1973, defendant appeared through counsel and

moved to vacate the judgment against him. He claimed his failure to appear and defend was based on mistake, inadvertence, surprise or excusable neglect. Essentially his position in that regard was that he thought plaintiffs were bluffing and, further, that he understood he had 60 days within which to appear.

Defendant's affidavit filed with his motion to vacate also claimed a meritorious defense to the plaintiffs' claims.

As to the court's findings of misrepresentation and nondisclosure by the defendant, defendant's affidavit denied any misrepresentation and claimed a full disclosure was made.

As to the court's finding that the defendant had no right to convey the stock, defendant's affidavit claimed that he did have such a right. Defendant went on therein to state that he had agreed to work full time for the corporation in exchange for a salary and a "partnership" agreement giving him a 50 percent interest in the corporate stock with one Homer L. Brand who owned all of such stock. A copy of an agreement dated June 28, 1972, is attached to the affidavit. That document does indeed refer to the defendant being a joint holder of the stock of Commercial Courier Service, Inc., but it also contains prohibitions and limitations against his transferring that interest.

Defendant's affidavit also has attached to it a copy of a printed bill of sale form whereby the defendant's partner sold "[o]ne share of stock which represents the controlling interests of Commercial Courier Inc. . . ." to the defendant. The bill of sale form indicates a payment as apparently having been made by the defendant to his partner. It provides for a total payment by defendant to his partner of $10,000 and requires other payments to be made on dates tied in to the due dates of the notes which were signed by the plaintiff Buchmann. It is noted that the bill of sale relating to the sale of the controlling share of stock is dated some 10 days after the date on which the court found that the plaintiff Buchmann paid the defendant $8,000 in cash and delivered his $17,000 in promissory notes for 51 percent

of the stock in the corporation. The bill of sale given by the defendant to the plaintiff Buchmann dated December 1, 1972, had recited that "[f]ifty one per cent (51%) of stock of COMMERCIAL COURIER INC., is hereby surrendered . . ."

On June 21, 1973, the trial court, which had the foregoing before it, denied defendant's motion to vacate the judgment.

This appeal followed. Subsequent to the appeal being taken and jurisdiction thereby being conferred on this court, plaintiffs' attorneys withdrew.

## ISSUE

The sole issue in this case is whether the trial court erred in refusing to vacate the default judgment entered against defendant.

## DECISION

CONCLUSION. The trial court did not err in refusing to vacate the judgment.

■ Statutory provisions previously governed the means by which judgments could be vacated. *See* RCW 4.32.240 and RCW 4.72.010-.090. For the most part, the procedures established by those statutes as they relate to the vacation of judgments have now been superseded by CR 60. With the adoption of that rule, it became exclusive to the extent of its coverage and any inconsistent provisions in the noted statutes were abrogated by it. RCW 2.04.200; *In re Messmer*, 52 Wn.2d 510, 512, 326 P.2d 1004 (1958).

Although CR 60 retains much of the statutory language, it has been rearranged into a single comprehensive rule patterned after Fed. R. Civ. P. 60 and is supplemented with additional language taken directly from that federal rule. 4 L. Orland, Wash. Prac. 415 (2d ed. 1968).

■ The provisions of CR 60 which are pertinent to the case at bar are substantially identical to the language of the statutes which preceded it. Therefore, in deciding this case which arose after the promulgation of CR 60, recourse can appropriately be had to decisions construing the statutes.

CR 60 (b) (1) reads as follows:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;

■■ *Beckett v. Cosby*, 73 Wn.2d 825, 827, 440 P.2d 831 (1968), is in point. That case states the principles on which such motions are determined:

We agree with defendants that the court's first concern in ruling on such a motion for vacation of a default judgment, which is based on excusable neglect, is whether a showing has been made as to the existence of a meritorious defense. One seeking the vacation of a default judgment must allege and prove facts which constitute a prima facie defense to the action. *Lasell v. Beck*, 34 Wn.2d 211, 208 P.2d 139 (1949); *Person v. Plough*, 174 Wash. 160, 24 P.2d 591 (1933); *Osborne v. Osborne*, 60 Wn.2d 163, 372 P.2d 538 (1962); *Robertson v. Wise*, 152 Wash. 624, 279 Pac. 106 (1929). The prime concern of the courts is to do justice, and where an injustice would result from a technical failure and the moving party is able to demonstrate a meritorious defense, the court is justified in vacating the default judgment. However, the rules may not be willfully disregarded with impunity. *White v. Holm, ante* p. 348 [73 Wn.2d], 438 P.2d 581 (1968); *Jacobsen v. Defiance Lumber Co.*, 142 Wash. 642, 253 Pac. 1088 (1927); *Bishop v. Illman*, 14 Wn.2d 13, 126 P.2d 582 (1942). The more conclusively such defense can be shown, the more readily the court will vacate the default judgment. *Merrell v. Hamilton Produce Co.*, 55 Wn.2d 684, 349 P.2d 597 (1960); *Borg-Warner Acceptance Corp. v. McKinsey*, 71 Wn.2d 650, 430 P.2d 584 (1967); *Yeck v. Department of Labor & Indus.*, 27 Wn.2d 92, 176 P.2d 359 (1947).

Defendant's showing of a meritorious defense in the present case falls well short of being conclusive.

The trial court found a misrepresentation in the sale of stock and also explicitly found as a fact that defendant failed to disclose the pending $25,000 lawsuit against the

corporation and complaints that had been made to the Attorney General for the State of Washington concerning the corporation. Defendant met the trial court's findings with what at best was a general denial. This is similar to *Beckett*. There the default judgment was based on an oral contract. The defendants' showing as to a meritorious defense consisted of a general denial of the existence of any such oral contract. As to that, the court held:

> We do not agree, however, that the record which is presented to us for review, or the file which was properly before the trial court for consideration, established such a meritorious defense that only a willful disregard of the complaint could warrant the default judgment. The denial in defendants' affidavit of the existence of the agreement sued upon raises, at most, a prima facie defense.

*Beckett v. Cosby, supra* at 828. So it is here that on this basis for the trial court's judgment, no more than a prima facie defense was shown. Affidavits supporting motions to vacate judgments must set out the facts constituting a defense. It is insufficient to merely state allegations and conclusions. CR 60(e)(1); *Penfound v. Gagnon*, 172 Wash. 311, 312, 20 P.2d 17 (1933).

As to the trial court's finding that defendant had no right to sell the stock, the showing made by defendant is stronger. Defendant's affidavit contains a more detailed statement as to the basis of his right to sell the stock and attaches documents which support his contention to some extent. When carefully examined, however, the ambiguities and inconsistencies as between what the defendant's affidavit says and what the documents show are such that the total showing in this regard cannot be considered as rising higher than a prima facie defense.

In *Beckett*, the court first determined that a conclusive defense had not been shown, then inquired as to whether excusable neglect had been shown. The court determined that despite an assertion by the defendants that they had been lulled into inattentiveness by telephone conversations

with plaintiff's attorney, such showing was insufficient to establish an abuse of discretion by the trial court. Accordingly, the default judgment was affirmed.

In determining whether there was any mistake, inadvertence, surprise or excusable neglect in the present case, we first note that defendant was served within the state of Washington and in the county in which the suit was filed. The defendant was personally served with summons and complaint. The stock transaction sued on was one of which he had detailed knowledge. The 4-page complaint alleged fraud, stated details thereof and sought substantial damages. The plain language of the summons required that the defendant appear within 20 days. This he did not do.

Defendant has offered no excuse or justification for not so appearing save for a statement of his purely subjective belief that he thought the action was "merely a bluff," and that since he was out of the state on business much of the time subsequent to being served, he understood from the summons that he had 60 days in which to do something about it.

Defendant does not further explain why, if he did in fact believe he had 60 days to appear, he did not do so within that time. He did nothing until he received a copy of the judgment in the mail from plaintiffs' attorney.

Neither is any explanation offered as to why defendant disregarded the certified copy of the show cause order which was also personally served on him. The clear mandate of that order was that he come into court in connection with the restraining order. This he did not do either.

The court was confronted with a similar situation in *Bishop v. Illman*, 14 Wn.2d 13, 126 P.2d 582 (1942). There a default judgment was taken against a garnishee defendant. It was uncontroverted that the garnishee defendant's cashier who had been served with a writ of garnishment did not deny having stated that he would not accept the writ that he had been served with and that he did not see any necessity to answer it. The trial court refused to set aside

the default. On appeal, the trial court was affirmed, the court stating:

> On the contrary, it appears to us that the evidence conclusively establishes a willful disregard of the writ on the part of the garnishee defendant. This, the court will not tolerate. *Jacobsen v. Defiance Lbr. Co.*, 142 Wash. 642, 253 Pac. 1088; *Rule v. Somervill*, 150 Wash. 605, 274 Pac. 177, *supra; Pacific Coast Paper Mills v. Pacific Merc. Agency*, 165 Wash. 62, 4 P. (2d) 886. In the *Jacobsen* case, the court said:
>
> "We do not mean by what is now said that the rules may be disregarded with impunity. Far from it. The courts will seldom relieve one who has wilfully disregarded the command of a summons duly served, and always the burden is on the party seeking the relief to show that his failure was not so negligent as to be wholly inexcusable and that he has a good defense, in whole or in substantial part."
>
> To countenance such an attitude as the garnishee defendant in this case manifested towards the writ of garnishment, would soon seriously impair, if not destroy, the effectiveness of all judicial process.

*Bishop v. Illman, supra* at 17.

The process issued in the present case meant what it said. In reviewing the record before us, it is difficult to conclude other than that defendant's noncompliance with that process was likely willful, and if not, was at least due to inexcusable neglect. This court will not relieve a defendant from a judgment taken against him due to his willful disregard of process, or due to his inattention or neglect in a case such as this where there has been no more than a prima facie showing of a defense on the merits. *Beckett v. Cosby*, 73 Wn.2d 825, 828, 440 P.2d 831 (1968); *Larson v. Zabroski*, 21 Wn.2d 572, 575, 152 P.2d 154 (1944); *Bishop v. Illman, supra* at 17. It should also be noted that relief is likewise denied by the federal courts under Fed. R. Civ. P. 60(b)(1), the analogous federal rule, where a judgment results from mere carelessness. 7 J. Moore, Federal Practice, ¶ 60.22[2], at 254 (1974).

Even if we could somehow escape the conclusion of

willfulness or inexcusable neglect on the basis that plaintiffs have not seen fit to contest this appeal (*See Riley v. Sturdevant*, 12 Wn. App. 808, 532 P.2d 640 (1975)), we would nonetheless be unable to grant the relief requested. Based on the record and brief presented, defendant has not made out a prima facie case that the trial court abused its discretion. A motion to vacate a default judgment is addressed to the discretion of the trial court, and the exercise of that discretion will not be disturbed unless an abuse thereof is clearly shown. *Bergren v. Adams County*, 8 Wn. App. 853, 859, 509 P.2d 661 (1973); *Carmichael v. Carmichael*, 5 Wn. App. 715, 718, 490 P.2d 442 (1971).

The principles stated in *White v. Holm*, 73 Wn.2d 348, 438 P.2d 581 (1968), relied on by defendant are consistent with the rules stated in *Beckett*, as well as with our holding in the present case.

In *White*, the court ruled that the default judgment should be vacated because the defendants had established that their failure to respond timely to the plaintiff's claim was due to excusable neglect. In *White*, the defendants were able to show that when they were served with suit papers they promptly notified their insurance agent, expeditiously consulted an attorney and diligently complied with all requests of the insurance adjuster. The defendants in that case were also able to show that the reason a default judgment was taken against them was because of their having relied in good faith on assurances given to them by their insurance agent and attorney as to their insurer's responsibility in furnishing them a defense. Such showing in *White* was in marked contrast with the insufficient showing of excusable neglect in *Beckett* and the notable absence of any such showing in the present case.

Defendant's brief also contains reference to alleged collusion by Mr. Brand, the original owner of all of the corporate stock, in attempting to deprive defendant of his interest in the corporation. There is no record to indicate that this was presented to the trial court, therefore, we

cannot consider it for the first time on appeal. *State v. Edwards*, 9 Wn. App. 688, 690, 514 P.2d 192 (1973). Furthermore, there are no claims either by or against Mr. Brand presently before this court for determination.

Affirmed.

SWANSON and CALLOW, JJ., concur.