[No. 27791. Department One. April 24, 1940.]

YATES F. HAMM FUNERAL HOME, INC., et al., Respondents, v. FRANK BILES et al., Appellants.[1]

[1]Reported in 101 P. (2d) 597.

*Robt. C. Thurston,* for appellants.

*Snively & Bounds* and *Owen Clark,* for respondents.

MILLARD, J.—This action was brought by Lois Hamm, owner of a Packard four-door sedan, of which the Yates F. Hamm Funeral Home, Incorporated, was the bailee, to recover for property damage to that automobile sustained as a result of the collision of that vehicle, due to the alleged negligence of defendants, with a truck owned by defendant marital community and operated by defendant husband. Trial of the cause to the court resulted in findings and judgment in favor of the plaintiffs. Defendants appealed.

Counsel for appellants contends that the proximate cause of the collision was not the negligence of the operator of their truck, but that the proximate cause of the collision was the contributory negligence of respondents' driver, which bars recovery as a matter of law. The trial court found—there is ample evidence to sustain the findings—that, on July 23, 1938, about twilight or dusk, when it was becoming difficult to see, an employee of respondent corporation was operating a Packard four-door sedan, owned by Lois Hamm and of which respondent corporation was the bailee, in a westerly direction on a straight and level east and west arterial paved highway, known as the Naches highway, at the lawful and reasonable rate of speed of from forty to forty-five miles an hour. Appellant Frank Biles was at that time proceeding in the same direction as respondents' automobile on that highway in a logging truck and in front of respondents' automobile.

At a point about one-half mile west of the town of Naches, respondents' operator attempted to pass the truck operated by appellants after sounding his horn as a signal of intention to pass the truck. The headlights on the automobile of respondents were burning. As respondents' operator arrived at a point even with the rear of, and in a position to pass, the logging truck, appellants' operator, without a proper warning, negligently made a turn to the left across the path of the respondents' vehicle for the purpose of proceeding onto a private dirt road to the south, which negligence was the proximate cause of the collision. The attempt to pass was not at an intersection.

At this point, we should observe that the turn was made, as Biles testified, for the purpose of proceeding southerly from the arterial highway onto a road into a tourist park.

The trial court further found that, prior to turning to the left, Biles did signal, but that his signal was improper and unreasonable considering the time of day, general visibility, obstructions on the rear of the truck, the respective speeds of the two vehicles, the signal being visible only for a distance of one hundred and twenty-five feet, and that a reasonably prudent driver attempting to pass could not be expected to see the sort of signal that was given. The trial court further found that there was no contributory negligence on the part of the respondents.

Respondents' sedan was traveling at a speed of from forty to forty-five miles an hour, and the speed of the truck was from twenty to thirty miles an hour just prior to the collision. The evidence is in sharp conflict as to whether the horn signal was given by respondents' operator of his intention to pass appellants' truck; therefore, the finding of the trial court, as a matter of fact, that the horn was sounded to inform appellants

of the intention of respondents' operator to pass appellants' truck is conclusive of any question whether respondents' operator gave the required signal of his intention to pass.

■ The next question is whether appellant Biles gave the signal required by the statute of his intention to make a left turn. The statute reads as follows:

"It shall be the duty of every person operating a vehicle upon any public highway and intending to turn from a standstill or while in motion intending to turn or stop, to give a timely signal from the left-hand side of such vehicle indicating the direction in which he intends to turn or that he intends to stop, as follows: If he intends to turn to the left he shall extend his arm in a horizontal position from the left side of such vehicle continuously for a reasonable length of time; if he intends to turn to the right he shall extend his arm from the left side of the vehicle with his forearm raised vertically continuously for a reasonable length of time; if he intends to stop he shall extend his arm from the left side of such vehicle with his forearm lowered vertically continuously for a reasonable length of time. For the purpose of this section, a reasonable length of time shall be that time required to traverse a distance in feet equal to five times the maximum speed in miles per hour allowed by law during the approach to the point of turning or stopping." Rem. Rev. Stat., Vol. 7A, § 6360-85 [P. C. § 2696-843] (Laws of 1937, chapter 189, p. 897, § 85).

Appellant Biles testified that he signaled with his arm about seventy feet before he made the left turn. Other witnesses testified the signal was given for a distance of from one hundred and twenty-five feet to one hundred and fifty feet. The trial court was of the opinion that Biles gave the arm signal of his intention to make a left turn for a distance of about one hundred and twenty-five feet before the point of collision.

The cab on the logging truck operated by the appellants was 57½ inches wide. To the rear of that

cab in which the operator sat there were three obstructions called "bunks," each ninety inches wide on the truck. These "bunks" were twenty-three inches above the level of the pavement, and the cab window was twenty-eight inches above the level of the pavement. Appellant Biles extended his arm twenty inches beyond the cab when he held it out the window in signal position. That is, approximately four inches of the arm of the operator would be visible extended horizontally beyond the "bunks" which extended out approximately sixteen inches beyond the cab of the truck. Above the level of the "bunks" the arm was visible approximately five inches. The maximum speed limit at the point of the accident was fifty miles an hour. It follows that the duty imposed by the statute (Rem. Rev. Stat., Vol. 7A, § 6360-85) upon appellants was to signal for a distance of at least two hundred and fifty feet, and that this failure to do so constituted negligence.

The trial court aptly commented that to hold an arm out which would extend four inches beyond the end of the "bunks," when with each passing second it became increasingly at that time of the evening more difficult to see—to hold the arm out in that position for one hundred and twenty-five feet before making a turn on the highway on which a speed of fifty miles an hour was allowed, together with the fact, as appellant Biles testified, that, before making the signal he glanced in the rear view mirror and saw nothing approaching from the rear (although the evidence is undisputed that at that time respondents' sedan was approaching with its lights burning), indicated negligence on the part of appellant Biles which contributed proximately to the accident.

Counsel for appellants contends (doubtless upon the theory that the collision occurred at an intersec-

.tion and that respondents should have anticipated that the appellants might depart from the highway at that point) that respondents' operator was negligent in failing to keep a proper look-out while driving at forty to forty-five miles an hour, as the evidence establishes the fact that respondents' operator did not pay any attention to intersecting roads unless they were marked by highway signs.

This contention is without substantial merit. The trial court found, and the evidence sustains that finding, that there was not an intersection at the place of the turning and the collision, but at that point there was a private dirt highway; and that there were no signs or unusual features about that driveway to attract the attention of a reasonably prudent automobile operator; hence, there was nothing from which respondents could anticipate, nor was there anything to put them on notice, that the appellants might use this private driveway. Respondents' operator was traveling at a speed within the maximum speed limit, and, as the trial court found, he was not driving at an excessive speed under the circumstances.

We concur in the view expressed by the trial court that, traveling along an arterial highway and until such time as he was reasonably apprised of an intention of another user of that highway, ahead of him, to turn off the highway to the left, the operator of respondents' automobile had a right to travel at the speed of from forty to forty-five miles an hour, and he had a right to pass the appellants' truck at that time. The signal given, under the circumstances, by appellants' operator was not such as could apprise respondents' driver in time of the intention of the operator of appellants' truck to drive across the highway to the left in front of the approaching automobile.

Under the facts of this case, if the operator of appellants' truck intended to turn to the left, he should, as the statute requires, have extended his arm in a horizontal position from the left side of his truck continuously for a reasonable length of time, which in this case is two hundred and fifty feet, being the time required to traverse a distance in feet equal to five times the maximum speed of fifty miles an hour allowed by law during the approach to the point. of turning or stopping.

We find none of our opinions of the past out of harmony with the foregoing, and we deem it unnecessary to burden this opinion with numerous citations. The evidence respecting the speed at which respondents' automobile was moving does not establish negligence on the part of respondents through excessive speed. Respondents' speed was not in excess of fifty miles an hour limit allowed on this arterial highway.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.