[No. 21991. Department One. July 8, 1930.]

AGRICULTURAL & LIVESTOCK CREDIT CORPORATION, *Appellant*, v. PERRY H. MCKENZIE *et al.*, *Defendants*, PORTLAND LIVESTOCK COMPANY, *Appellant*, AUGUSTA KALANQUIN, *Respondent*.

AUGUSTA KALANQUIN, *Respondent*, v. PERRY H. MCKENZIE, *et al.*, *Defendants*, PORTLAND LIVESTOCK COMPANY, *Appellant*.[1]

*Huffer, Hayden, Merritt, Summers & Bucey,* for appellants.

*Earl Husted* and *Anderson & Richards,* for respondents.

MILLARD, J.—For the purpose of foreclosing its chattel mortgage covering a herd of dairy cattle owned

[1]Reported in 289 Pac. 527.

by Perry H. McKenzie and pastured upon a farm in Snohomish county leased by the defendant from Augusta Kalanquin, the Agricultural & Livestock Credit Corporation commenced an action April 16, 1928, against McKenzie. On July 14, 1928, Augusta Kalanquin instituted an action against the Portland Livestock Company and Perry H. McKenzie and wife for the foreclosure of an alleged agister's lien upon the livestock and for the appointment of a receiver in view of the threatened removal of the stock from the jurisdiction of the court by the defendants. Hearing was had (the defendants appearing and resisting the appointment of a receiver), resulting in the entry of an order appointing Paul P. Philbrick as permanent receiver to

". . . feed and care for said cattle, milk the cows and market the milk, using the proceeds in a careful and prudent manner in the purchase of food, care, labor and supplies reasonably necessary to care for and maintain said stock and that he shall at all times remain subject to the further order of the court."

On July 23, 1928, by amended complaint in the chattel mortgage foreclosure action, the Agricultural & Livestock Credit Corporation joined as defendants, in addition to Perry H. McKenzie (the original defendant), McKenzie's wife, the Portland Livestock Company, the Co-operative Mercantile Company and Augusta Kalanquin. On September 17, 1928, all of the defendants (except Augusta Kalanquin against whom an order of default had been entered for failure to answer) consenting, the court entered a decree foreclosing the chattel mortgages of the Agricultural & Livestock Credit Corporation and of the Portland Livestock Company which were adjudged first and second liens, respectively, upon the herd of cattle. Augusta Kalanquin was adjudged to have no lien upon

or title to any of the cattle in the herd. On October 15, 1928, the court vacated, upon Augusta Kalanquin's motion, the default and the final decree as to her.

On October 30, 1928, the two causes were consolidated for trial, and an order was entered the same date, to which the appellants consented and with which the receiver complied, directing the receiver to sell the cattle. The substance of the decree resulting from the trial of the consolidated actions in January, 1929, is as follows:

Augusta Kalanquin was again adjudged to have no lien upon, or title to, any of the cattle as against the two livestock companies, but was granted a personal judgment against McKenzie and wife on account of pasturage of the livestock. For disbursements incidental to the receivership and for his compensation and attorneys' fees, the receiver was adjudged entitled to the sum of thirteen hundred and sixty dollars and thirty-four cents, which was declared to be a paramount charge upon the proceeds of the sale of the cattle, prior in rank to the lien thereon of the chattel mortgage rights of the two livestock companies. Those two companies were granted a judgment against Augusta Kalanquin for two hundred dollars, representing the compensation of the receiver and the allowance of the receiver's attorney's fees.

The appeal is prosecuted by the two livestock companies from the order entered October 15, 1928, vacating the default and final decree as to Augusta Kalanquin in the chattel mortgage foreclosure action; and from that part of the decree entered January 31, 1929, in the consolidated actions, ordering the receivership expenses paid out of the proceeds of the sale of the cattle as a charge prior in rank to the appellants' chattel mortgage liens.

Appellants first contend that the court abused

its discretion in vacating the default decree in the mortgage foreclosure action. In support of the motion to vacate and set aside the default and decree, the respondent and one of her present counsel submitted affidavits to the effect that the respondent was served with the amended complaint in the mortgage foreclosure action and submitted the same to her then attorney, Mr. Husted; that Mr. Husted departed from this state and turned the agister lien case over to Mr. Richards of the firm of Anderson & Richards, who was retained September 24, 1928, by the respondent; that, at the time Richards received the agister lien papers from Husted, the former was not advised of the mortgage foreclosure cause; that the default was taken prior to the date the respondent retained her present counsel, and while her former attorney was absent from the state. The controverting affidavits of appellants are to the effect that the respondent and her present counsel had knowledge of the status of both cases; that the parties negotiated for the settlement of the two causes, but no understanding was had that respondent's time to answer the complaint would be extended.

It fairly appears, and the order vacating the default so declares, that, prior and subsequent to the entry of the order of default, August 17, 1928, negotiations for an adjustment of the claims and differences of all of the parties to both actions were carried on between counsel for the appellants and the then counsel (Mr. Husted) for the respondent. While the negotiations were under way, Mr. Husted departed from the state, and, in the subsequent negotiations, the respondent was represented by Anderson & Richards, with whom respondent's original counsel had left the matter. Respondent's present counsel were not fully acquainted with the proceedings had in the foreclosure

and agister actions until after the entry of the order of default and the entry of the decree.

A consideration of the entire record, including the supporting and controverting affidavits and the admissions of counsel made during argument, convinced the trial court (as recited in the order vacating the default) that an instance of excusable neglect on the part of respondent was established; that the respondent had not been so far at fault as to justify a denial to her of an actual hearing and determination of her right to the lien attempted to be asserted in her behalf.

A question of fact was presented to the trial court as to whether the respondent had been guilty of excusable neglect in not answering the complaint. The motion to vacate the default was an appeal to the discretion of the trial court, and the exercise of that discretion will not be disturbed by us unless a clear abuse is shown, inasmuch as the trial of cases on their merits is favored.

"An appellate court will not disturb an order vacating a judgment by default if it is satisfied that the trial judge acted well within his discretion in granting the order. Where an application is made to set aside a judgment entered by default and to permit an answer to be filed, if the facts disclosed by the showing involve purely a question of law, it will not require discretion on the part of the court and must be determined solely on the question of law raised; but where it presents a question of fact as to the diligence of the party, or as to his having been taken by surprise, or having been mistaken in a matter of fact, the application will appeal to the discretion of the court, and an appellate court will not disturb the exercise of that discretion unless a clear abuse thereof is shown." 2 R. C. L., p. 215, § 179.

There is no intimation that, by the negotiations, the appellants intended to mislead respondent. That she

was mistaken, and that her neglect was excusable, the court found appeared not only from the affidavits, but from the admissions of counsel. She relied upon the attorney who represented her in those negotiations. Through no fault of hers, he departed during the progress of the negotiations, and she was without a representative until she retained her present counsel, September 24, 1928, who promptly acted. Within five days from the time her present attorney accepted respondent's retainer, the motion to vacate the default was filed. By her answer, the respondent alleged a lien for pasturage of livestock, and also alleged a claim for leasing of six head of the livestock to the McKenzies. The facts alleged in respondent's answer, while sufficient for the recovery of a judgment against the McKenzies, were insufficient to establish a lien paramount to the chattel mortgage liens of the appellants. However, we can not say that the trial judge abused his discretion because the second decree adjudged (as did the one set aside) that the respondent had no lien or title to the cattle as against the appellants. A motion to vacate a judgment is addressed to the sound legal discretion of the trial court, whose determination we will not disturb unless a plain abuse of discretion is shown; and we are less likely to interfere with the discretion of the trial court where the judgment is set aside than where it is not.

"The rule is that, where default has been opened by the trial court, a stronger case showing an abuse of discretion is required for a reversal in this court than where a trial on the merits has been denied." *Combination Fountain Co. v. Rogers,* 186 S. W. (Tex. Civ. App.) 407, 408.

Appellants next complain of that portion of the decree ordering the receivership expenses, including compensation to the receiver and his attorneys, paid

out of the proceeds of the sale of the cattle as a charge prior in rank to the appellants' chattel mortgage liens.

The Portland Livestock Company did not appeal from the order appointing a receiver to feed and care for the livestock. That company was represented by the same counsel who represented the other appellant, who was not a party to the agister lien action. The showing made of conflicting claims and threatened removal of the cattle from the jurisdiction of the court justified the appointment of a receiver. The order appointing the receiver is broad enough to cover all lien claimants. It was so drawn by the court to protect the rights of all parties. Both appellants had actual knowledge of the terms of the order. Failure to appeal from that order within the statutory period constitutes acquiescence in the entry of the order, and precludes questioning on this appeal the propriety of the appointment. Both appellants consented to the entry of the order directing the receiver to sell the cattle and to pay the proceeds into the registry of the court. It was the duty of the receiver to feed, milk, and shelter the cattle. The stock were entitled to maintenance. That expense was a proper charge against the proceeds of the sale.

Appellants argue that the receivership expenses should be paid by the respondent, who, having no lien against the property, instituted litigation and therein caused a receiver to be appointed, with resultant loss in the care of the property of which the appellants were mortgagees.

"The third question on this appeal presents the question of whether or not any portion of the receivers' expenses should be held to be prior to the mortgage. The bank was in no way a party to the securing of the appointment of a receiver. We have heretofore held that where a receiver is appointed for mortgaged personal property at the instigation of

some person other than the mortgagee, no part of the expenses of the receivership can be made a charge against the property or superior to the rights of the mortgagee. *Lammon v. Giles,* 3 Wash. Terr. 117, 13 Pac. 417.'' *Bank of California v. Clear Lake Lum. Co.,* 146 Wash. 543, 264 Pac. 705.

We again emphasize the fact that, in the appointment of the receiver, the appellants concurred by failing to appeal from the order of appointment. If the receiver had not cared for the cattle, some one else, or the appellants would have been required to preserve the property until the rights thereto had been adjudicated. Of that expense, appellants do not complain, nor should they, as the disbursements were for the benefit of the mortgagees. In *Bank of California v. Clear Lake Lum. Co., supra,* it is stated, that receivership expenses may be made a lien prior to mortgage liens when such expenses are incurred for that which inures to the benefit of the mortgage claimant. The facts in the case at bar are illustrative of the exception to the rule which appellants seek to invoke.

Appellants were given judgment against respondent in an amount equal to the compensation allowance of the receiver and the allowance of the receiver's attorneys' fees. Appellants are not entitled to more than that.

The decree is affirmed.

MITCHELL, C. J., PARKER, BEALS, and TOLMAN, JJ., concur.