[No. 29966. Department Two. January 10, 1947.]

ANNIE L. YECK, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

*J. Peter P. Healy*, for appellant.

*The Attorney General, Phil H. Gallagher* and *Lucile Lomen, Assistants*, for respondent.

CONNELLY, J.—Plaintiff's husband was injured on November 12, 1942, while engaged in an extrahazardous occupation. He died on December 4, 1942.

[1] Reported in 176 P. (2d) 359.

Laws of 1941, chapter 209, p. 624, § 1 (Rem. Supp. 1941, § 7679 [P.P.C. § 705-1]), went into effect on December 3, 1942. This act relates to the schedule of awards to be allowed as industrial compensation and has particular reference under our present inquiry to the awards allowable to widows of deceased workmen killed in extrahazardous employment. After the enactment of this law, which was an amendment to the workmen's compensation act, a petition for referendum was filed and the act went to a vote of the people. This accounts for the lateness of the date of its going into effect following its enactment by the legislature in 1941.

The schedule of awards in effect on November 12, 1942 (Rem. Rev. Stat., § 7679), when plaintiff's husband was injured, contained the following provision with reference to widows' industrial pensions:

"(1) If the workman leaves a widow or invalid widower, a monthly payment of thirty-five dollars ($35.00) shall be made throughout the life of the surviving spouse, to cease at the end of the month in which remarriage shall occur, and the surviving spouse shall also receive per month for each child of the deceased under the age of sixteen years at the time any monthly payment is due the following payments: For the youngest or only child twelve dollars and fifty cents ($12.50), for the next or second youngest child seven dollars and fifty cents ($7.50), and for each additional child five dollars ($5.00): Provided, That in addition to the monthly payments above provided for, a surviving widow of any such deceased workman shall be forthwith paid the sum of two hundred and fifty dollars ($250.00)."

The applicable portion of the later act (Rem. Supp. 1941, § 7679), which plaintiff contends applies to her claim, is as follows:

"(1) If the workman leaves a widow or invalid widower, a monthly payment of fifty dollars ($50) shall be made throughout the life of the surviving spouse, to cease at the end of the month in which remarriage shall occur, and the surviving spouse shall also receive per month for each child of the deceased under the age of eighteen years at the time any monthly payment is due the following payments: For

the youngest or only child fifteen dollars ($15), for the next or second youngest child ten dollars ($10), and for each additional child seven dollars and fifty cents ($7.50): *Provided,* That in addition to the monthly payments above provided for, a surviving widow of any such deceased workman shall be forthwith paid the sum of two hundred and fifty dollars ($250)."

The joint board of the department of labor and industries held that plaintiff's claim was covered by the earlier act and not by the later amendment. She appealed from this ruling to the superior court of Pierce county. Notices of appeal and various other processes and papers in the case were served by plaintiff's counsel upon an employee of the department of labor and industries. None were ever served upon the attorney general of the state of Washington, although a notice appears in the files of the clerk of the superior court for Pierce county, signed by the attorney general, requesting that all processes in the case be served upon him. Plaintiff's counsel states that he had no knowledge of the filing of this notice and had never been served with a copy of it.

The case was noted for trial in the superior court of Pierce county, and the trial judge directed plaintiff's counsel to notify the defendant department of the date of hearing. He did so by notifying the department of labor and industries but not the attorney general. Through some inadvertence, mistake, oversight, or carelessness on the part of employees in the department of labor and industries and in the office of the attorney general, no proper notice of the date of trial was brought to the attention of the assistant attorney general in charge of the case, and he, accordingly, did not appear in court on that date. Thereupon, plaintiff's counsel moved for an order of default and judgment upon the order, which were granted, and judgment was entered in accordance with the terms of the later statute relating to the schedule of widows' pensions under the workmen's compensation act.

Thereafter, plaintiff caused to be issued a citation to the director of the department of labor and industries requiring

him to show cause why the judgment which had been entered by default was not complied with. Thereupon, the attorney general appeared in the action and moved to set aside the default, supporting such motion with an affidavit averring that the department of labor and industries had a complete legal defense to the claim of plaintiff, in that the statute under which the awards set forth in the default judgment had been computed did not apply to plaintiff's case, but that the earlier statute, carrying a schedule of lesser awards, did apply.

The trial court, following argument, granted the motion to vacate the order of default and judgment entered thereon and reinstated the case for hearing upon the merits. Following hearing, the court entered judgment requiring the department of labor and industries to pay to plaintiff a widow's pension and awards in amounts fixed by the earlier statute quoted herein. From this judgment, plaintiff has appealed.

█ This court has long adhered to the rule that the matter of setting aside default judgments is discretionary with the trial judge, and that we will not interfere with the exercise of this discretion unless a manifest abuse thereof is made to appear. It will be recalled that, in this case, a full hearing was had upon the merits in the court below, following that court's vacating of the default judgment. This presents a different situation than if the trial judge had denied the party in default opportunity to present the case on its merits. We so held in *Jacobsen v. Defiance Lbr. Co.*, 142 Wash. 642, 253 Pac. 1088, wherein we said:

"The reason for the failure to appear is of far less importance than the fact that the default, if allowed to stand, will work an injustice. The purpose of the courts, whether their judgments be entered by default or after a trial, is always to do justice as nearly as may be, and no technical failure to appear in time, if that failure be not wilful, would justify a court in permitting to stand a judgment which it is satisfied is unjust. We do not mean by what is now said that the rules may be disregarded with impunity. Far from it. The courts will seldom relieve one who has wilfully disregarded the command of a summons duly

served, and always the burden is on the party seeking the relief to show that his failure was not so negligent as to be wholly inexcusable and that he has a good defense, in whole or in substantial part. The stronger the probability of such a defense, the less will be required on the question of the excusability of his neglect."

And in *Graham v. Yakima Stock Brokers,* 192 Wash. 121, 72 P. (2d) 1041, we said:

"It is also a rule that, where default has been denied or vacated by the trial court, a stronger case showing abuse of discretion is required for reversal than where trial on the merits has been denied. *Agricultural & Livestock Credit Corp. v. McKenzie,* 157 Wash. 597, 289 Pac. 527."

There is authority for courts to vacate judgments contained in the following statutes. Rem. Rev. Stat., § 303 [P.P.C. § 4-1], in its applicable portion, provides as follows:

"The court may, in furtherance of justice, . . . upon such terms as may be just, and upon payment of costs, relieve a party, or his legal representatives, from a judgment, order or other proceedings taken against him through his mistake, inadvertence, surprise, or excusable neglect."

And Rem. Rev. Stat., § 464 [P.P.C. § 71-1], provides in part, as follows:

"The superior court in which a judgment has been rendered, or by which or the judge of which a final order has been made, shall have power, after the term [time] at which such judgment or order was made, to vacate or modify such judgment or order: . . .

"3. For mistakes, neglect, or omission of the clerk, or irregularity in obtaining the judgment or order."

Section 308-13, Rem. Supp. 1945, provides:

"In all cases in which it is provided by Rem. Rev. Stats., §§ 303, 464-473 [P. C. §§ 8336, 8130-8139], that the court may modify, vacate, or relieve a party from any order, judgment, decree, or other proceedings taken against him, application shall be made within one year after entry thereof by motion filed in the cause stating the grounds upon which relief is asked, and supported by the affidavit of the applicant or his attorney setting forth a concise statement of the facts or errors upon which the motion is based, and if the moving party be a defendant, the facts

constituting a defense to the action or proceeding. Upon the filing of the motion and affidavit, the court shall enter an order fixing the time and place of the hearing thereof and directing all parties to the action or proceeding who may be affected thereby to appear and show cause why the relief asked for should not be granted. The motion, affidavit, and the order to show cause shall be served upon all parties affected in the same manner as in the case of summons in a civil action such time before the date fixed for the hearing as the order shall provide; but in case such service cannot be made, the order shall be published in the manner and for such time as may be ordered by the court, and in such case a copy of the motion, affidavit, and order shall be mailed to such parties at their last known post office address and a copy thereof served upon the attorneys of record of such parties in such action or proceeding such time prior to the hearing as the court may direct.

"Except as modified by this rule, Rem. Rev. Stats., §§ 303, 464-473 [P. C. §§ 8336, 8130-8139], shall remain in full force and effect."

There is likewise strong judicial precedent for the rule. *Livesley v. O'Brien,* 6 Wash. 553, 34 Pac. 134; *Agricultural & Livestock Credit Corp. v. McKenzie,* 157 Wash. 597, 289 Pac. 527; *Jacobsen v. Defiance Lbr. Co., supra.* °

■ The primary duty of courts in considering motions to set aside default judgments is to inquire whether or not the moving party against the default has a defense on the merits. If it clearly appears that a strong defense on the merits exists, the courts will spend scant time inquiring into the reasons which resulted in the entry of the order of default.

■ There can be no question concerning the conclusiveness of the defense which respondent had in the instant case. It was a legal defense, clearly demonstrating that the statute containing the schedule of awards upon which the original default judgment had been entered did not apply to appellant's case. We so held in *Lynch v. Department of Labor & Industries,* 19 Wn. (2d) 802, 145 P. (2d) 265, and *Barlia v. Department of Labor & Industries,* 23 Wn. (2d) 126, 160 P. (2d) 503. In the *Lynch* case, Judge Steinert said:

"Summing up the situation with reference to the determination of the legislative intent involved in this piece of legislation, we have as guides not only the presumption of prospective operation of the law, and the rule that retrospective operation will not be applied in the absence of language clearly indicating such legislative intent, but we also have concrete evidence of the intention of the governor in approving the act and of the people in subsequently adopting the referendum measure.

"We are convinced that the legislative intent under which chapter 209, Laws of 1941, and referendum measure 22 were finally enacted was that *the law should apply only to those cases wherein the injuries from which pension rights are derived occur subsequent to the effective date of the law, namely, December 3, 1942.*" (Italics ours.)

We followed the *Lynch* decision in the *Barlia* case, *supra*, wherein Judge Simpson said:

"It is urged by appellant that the facts in this case call for a different result. We are unable to conclude that the facts in this case change in any manner the application of the rule in the *Lynch* case. In that case, we called attention to our well-established rule that a statute is presumed to operate prospectively and will not be held to apply retroactively in the absence of language which clearly indicates such legislative intent. Attention was also called to the rule that awards payable under our compensation act are governed by the law in effect at the time the injury of the workman occurred. It was then stated:

" 'If referendum measure 22 be read and construed in the light of the rules hereinbefore stated, our conclusion must be that the provision for increased pensions to the widows of injured workmen speaks *in futuro* and includes only those cases *where the injury to the workman occurs subsequent to the effective date of the measure, December 3, 1942.*' " (Italics ours.)

On November 12, 1942, appellant's husband sustained injuries from which he died on December 4, 1942. The act under which she claims went into effect on December 3, 1942, and, therefore, could not apply to his injuries.

In the face of our recent decisions construing this statute, we believe that it would have been an abuse of discretion

for the trial judge to have refused to set aside the default judgment which he had erroneously entered.

For the foregoing reasons, the judgment of the lower court is affirmed.

STEINERT, SIMPSON, and MALLERY, JJ., concur.