[No. 32509. Department Two. November 19, 1953.]

CHRIS LEAVITT, *Appellant*, v. LOWELL DE YOUNG *et al.*, *Respondents.*[1]

[1]Reported in 263 P. (2d) 592.

*Marvin Mohl*, for appellant.

*N. A. Pearson* and *Kenneth M. Elliott*, for respondents.

DONWORTH, J.—This is an appeal from the judgment entered on a verdict for defendants in an action to recover for personal injuries and property damage alleged to have been sustained as the result of a collision between an automobile and a flat-bed truck. The judgment dismissed appellant's action. His motion for new trial was denied.

The accident happened just off the Bothell-Redmond highway in the private driveway of one Mark Tanner, which is situated on the east side of the highway. This highway runs generally in a north-south direction, and north of the driveway it gradually curves toward the east around

a slight rise upon which the Tanner residence is situated. The paved portion is approximately eighteen feet wide, divided into two lanes by a yellow center line, and is bordered on each side by gravel shoulders. It is a primary state highway, and the speed limit is fifty miles per hour.

The collision took place at approximately four o'clock on the afternoon of February 3, 1951. Appellant was driving his automobile south in the west lane. It had just started to rain, but the visibility was good. As appellant began to round the curve, he saw respondents' truck. Appellant was then about four hundred eighty feet north of the truck, which was parked on the west shoulder, facing south, parallel to the pavement. The driver of respondents' truck was waiting for the Tanner driveway on the opposite side of the highway to be cleared of vehicles so that he could drive into it and deliver his load of feed. The exact location of the parked truck was estimated by various witnesses to have been anywhere from twenty to seventy-five feet north of a point directly opposite the driveway.

As usual, there were numerous conflicts in the testimony of the witnesses as to the manner in which the accident happened.

Appellant testified that when he first saw the truck the driver was just getting into his seat. The driver said that when he climbed into the truck he looked both ways and could see nothing approaching in either direction. He then drove the truck slowly onto the highway. Its speed was between two and four miles per hour. The driver and one witness stated that the signaling device indicated a left turn. Another witness said he did not see the signal but could not testify positively that none was given. Appellant said no such signal was given. Appellant's speed as his car approached the truck was estimated by appellant and one other witness at between forty-five and fifty miles per hour. Mr. Tanner's only testimony on this point was that he had informed an investigating officer at the time of the accident that he thought appellant was going between sixty and seventy miles per hour.

The truck driver and two witnesses stated that after the truck started moving it turned sharply and crossed the highway almost at a right angle. When it was approximately half way across, the driver saw appellant for the first time. He estimated that the car was then between two hundred and four hundred feet away and was "hugging the center line."

Appellant testified that the truck pulled gradually onto the highway, and that in the absence of any signal he assumed that it would continue south. Appellant slowed down somewhat and then moved into the east lane to pass the truck. When he saw that the truck was turning across the highway, appellant sounded his horn, applied his brakes, and swerved to the east. The collision occurred in the Tanner driveway. The wheels of both vehicles were off the highway, although the body of the truck partially extended over the east portion of the pavement. Appellant's car struck the truck just behind the left door of the cab.

A white line indicating that it was unsafe to pass was painted on the pavement parallel to, and on the east side of, the center line for a distance of several hundred feet both north and south of the driveway. North of the Tanner property there was a similar line painted on the west lane, but an engineer testified that it ended one hundred twenty-three feet north of Mr. Tanner's mailbox, which was shown on a scale map admitted in evidence to be eight feet north of the driveway. This white line, therefore, ended at least one hundred thirty-one feet north of the driveway. Appellant's exact location when he crossed from the west lane into the east lane is not established by the evidence. He testified that in doing so he did not cross over the white line last mentioned. There was no testimony which disputed this statement.

About December 1, 1951, appellant's attorney conversed and corresponded with the adjuster for respondents' insurer in regard to the collision. No settlement resulted from these negotiations, and on January 21, 1952, appellant's attorney caused a summons and complaint to be personally served

upon respondents. These documents were received by the insurance company on January 25, 1952.

On the morning of February 12, 1952, appellant's attorney telephoned Mr. De Young's place of business, but was advised that he was not then in the office. A message was left to the effect that if no appearance was filed in the case a default judgment would be taken the next day. Appellant's attorney waited an extra day and on February 14, 1952, obtained a judgment against respondents in a substantial sum.

On March 7, 1952, respondents' attorneys filed a motion to set aside the default judgment. The accompanying affidavit stated that the insurance company's attorney was in Honolulu at the time this judgment was entered, but that he had previously made arrangements with the other attorney (who also signed this affidavit) to put in any necessary appearances, and that neither of them knew that appellant intended to take a default judgment. It was further stated that during this time the office of the attorney for respondents' insurer was being readied to move to another location and in some manner the file relating to this case had been mislaid and was not recovered until after the default judgment had been taken. The affidavit further alleged that respondents had a good and meritorious defense to the action and set forth the facts upon which their defense would be based.

Upon consideration of this affidavit and the controverting affidavits of appellant and his attorney, and after full argument, the superior court set aside the default judgment upon condition that respondents pay appellant a certain sum as attorney's fees and costs.

By his first assignment of error, appellant complains that the default judgment was improperly vacated.

Rem. Rev. Stat., § 303 [cf. RCW 4.32.240], provides in part:

"The court . . . may, upon such terms as may be just, and upon payment of costs, relieve a party, or his legal representatives, from a judgment, order or other proceed-

ings taken against him through his mistake, inadvertence, surprise, or excusable neglect."

Appellant argues that there was a willful disregard of the summons in this case, and that under the authority of *Bishop v. Illman,* 14 Wn. (2d) 13, 126 P. (2d) 582, the trial court erred in setting aside the default judgment. In the cited case, a bank willfully refused to answer a writ of garnishment and the court declined to set aside a default judgment against it, saying there was no evidence of fraud or excusable neglect.

■ A motion to vacate a default judgment is addressed to the discretion of the trial court, and substantial grounds therefor, including the showing of a meritorious defense, must be made to clearly appear. *Hurley v. Wilson,* 129 Wash. 567, 225 Pac. 441; *Robertson v. Wise,* 152 Wash. 624, 279 Pac. 106. An order granting a motion to vacate such judgment will not be disturbed by this court unless there was a manifest abuse of discretion. *Jacobsen v. Defiance Lbr. Co.,* 142 Wash. 642, 253 Pac. 1088; *Agricultural & Livestock Credit Corp. v. McKenzie,* 157 Wash. 597, 289 Pac. 527; *Yeck v. Department of Labor & Industries,* 27 Wn. (2d) 92, 176 P. (2d) 359.

As above stated, the trial court found that the entry of the default judgment was caused by excusable neglect or inadvertence. From our examination of the record pertaining to this matter, we cannot say that the court abused its discretion in so finding and in ordering the default judgment vacated.

As heretofore noted, the evidence concerning the accident was conflicting in several material respects. The issues of negligence, proximate cause, and contributory negligence were for the jury to decide, and its verdict in favor of respondents was decisive of these factual issues unless the trial court erred in giving any of the four instructions with respect to which appellant assigns error.

Exception was taken to instruction No. 22, which read as follows:

"You are further instructed that the laws of the State of

Washington, in force at the time here in question, provide:
"Rem. Rev. Stat. Sect. 6360-79:

" 'It shall be unlawful for any person operating any vehicle upon any public highway outside incorporated cities and towns to overtake and pass another vehicle proceeding in the same direction upon any curve when the view of the operator of such overtaking vehicle is obstructed or obscured within a distance of eight hundred (800) feet along such highway in the direction in which he is proceeding.' "

█ Appellant argues that there was no evidence tending to show any obstruction of his view within eight hundred feet as he approached the truck. Respondents attempt to justify the giving of this instruction on the ground that the truck itself constituted an obstruction of the view within the meaning of the statute. We cannot agree with this interpretation of the statute. If true, it would mean that every overtaken vehicle would constitute an obstruction of the view of the overtaking driver, and hence it would be impossible to ever pass another vehicle under circumstances similar to those presented in this case without violating the law. Clearly, the statute refers only to obstructions other than the vehicle about to be passed.

The issue as to appellant's alleged contributory negligence was submitted to the jury. The jury was instructed that one of the manners in which he was alleged to have been contributorily negligent was in driving in the east lane or wrong side of the highway. Later, the jury was instructed that the violation of a statute is negligence in itself, and in instruction No. 22 the jury was told that Rem. Rev. Stat., [Vol. 7A], § 6360-79, made it unlawful to pass another vehicle proceeding in the same direction where the view was obstructed within eight hundred feet. Thus, under the latter instruction the jury could have found that appellant was guilty of contributory negligence *per se* even though there was no evidence as to the existence of any obstruction to which the instruction could apply.

█ This court has frequently held that, where the trial court submits to the jury an issue concerning which there is no substantial evidence, the giving of such instruction is

prejudicial error. *Neeley v. Bock,* 184 Wash. 135, 50 P. (2d) 524; *Gould v. Witter,* 10 Wn. (2d) 553, 117 P. (2d) 210; *Hanford v. Goehry,* 24 Wn. (2d) 859, 167 P. (2d) 678; *Rathke v. Roberts,* 33 Wn. (2d) 858, 207 P. (2d) 716. Therefore, the giving of instruction No. 22 constituted prejudicial error.

 Instruction No. 27½ (likewise assigned as error) also concerned the lawfulness of appellant's act of crossing over the center line into the east lane under the circumstances heretofore described. This instruction read:

: "You are instructed that wherever the department of highways of the state of Washington has painted white lines on the center of the highway on a curve, it shall be unlawful to pass any other car along the portions of said highway with the painted center white stripe until the white stripe has ended."

Appellant's exception to this instruction was twofold: first, that the *white* stripe was not a center stripe, and second (and, we think, more important) that:

"In addition to that, it is not unlawful to pass any other car along the portion of said highway unless the painted white stripe is *on your side* of the center and not on the other side. This instruction confuses the jury in this case because there is testimony that there was a white line *on the other side of the yellow strip* which would prohibit passing coming north. There was no prohibition on passing going south." (Italics ours.)

The exception was well taken. The jury might have believed from this instruction that, if there was a white stripe *on either side* of the center line, it was unsafe to pass in either direction. The jury should have been informed that under the law the white stripe on the east side of the center line indicated only that it was unsafe to pass when traveling in a northerly direction. In the absence of a white stripe on the west side of the center line, it was not unlawful for appellant, who was traveling south, to cross into the other lane if the jury found that in so doing he exercised reasonable care under all circumstances.

Since there was prejudicial error committed in the giving of instructions No. 22 and No. 27½ a new trial must be or-

dered. We, therefore, do not deem it necessary to discuss in detail the other assignments of error.

However, we believe that no instruction similar to No. 20 should be given in the absence of some evidence that the director of highways had at the time of the accident erected *signs* lowering the speed limit below fifty miles per hour.

Although we do not find that the refusal of the court to give proposed instruction No. 15 constituted reversible error, we do believe that appellant is entitled to have his theory of the case submitted to the jury under the legal principle discussed in *Hamm Funeral Home v. Biles*, 3 Wn. (2d) 592, 101 P. (2d) 597.

The trial court erred in entering judgment dismissing appellant's action and in denying his motion for a new trial. The judgment is, accordingly, reversed and the cause remanded with instructions to grant appellant a new trial.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and FINLEY, JJ., concur.