[No. 22149–3–I.   Division One.   August 21, 1989.]

PEOPLES STATE BANK, *Respondent,* v. ARTHUR EARL
HICKEY, ET AL, *Defendants,* CAROL HICKEY,
*Appellant.*

*Andrew D. Peach,* for appellant.

*Philip E. Rosellini* and *Smith & Rosellini,* for respondent.

SCHOLFIELD, J.—Carol Hickey[1] appeals the trial court's denial of her motion to set aside a default judgment and a decree of foreclosure that were entered against her in favor of Peoples State Bank (Peoples). We affirm.

## FACTS

Carol Hickey and Earl Patrick Hickey were divorced in Whatcom County in December 1983. The property settlement agreement awarded all of the parties' real property to Earl and awarded Carol a lien for $15,000 against that property. The agreement provided that the $15,000 was to be paid to Carol no later than 90 days following the entry of the decree of dissolution.

In July 1984, Earl Patrick Hickey, Arthur Earl Hickey, and Pearl Hickey borrowed $135,000 from Peoples. To partially secure the loan obligation, Earl Patrick granted the bank a mortgage on a portion of the property that was awarded to him in the divorce from Carol.

In September 1985, Peoples filed a complaint for mortgage foreclosure based upon the default of Earl Patrick Hickey, Arthur Earl Hickey, and Pearl Hickey on their secured obligations. Carol Hickey and Wolfkill Feed & Fertilizer Corporation were named in the complaint as persons claiming an interest in the mortgaged property. Paragraph 13 of the complaint alleged that the interest of Wolfkill Feed & Fertilizer and the interest of Carol Hickey was "inferior, subordinate and subject to the lien of the plaintiff . . ."

---

[1] Carol Hickey's name is now Carol Francisco due to remarriage.

On October 19, 1985, Carol was served with a copy of the summons and complaint for mortgage foreclosure by personal service upon her husband, James Francisco, at their residence. The validity of the service of process is not challenged. Carol failed to appear, and an order of default was entered in November 1985.

In February 1986, the Whatcom County Superior Court entered findings of fact, conclusions of law and a decree of foreclosure, awarding judgment in favor of the bank in the sum of $146,502. The court made the following finding of fact, which Peoples had submitted to the court:

> That the [defendant], Carol Hickey [has] or [claims] some interest in, or lien upon the above–described property and premises or some part thereof. That the interest or lien of the [defendant] Carol Hickey, if any, [is] inferior, subordinate and subject to the lien of plaintiff.

Finding of fact 12.

Peoples had ordered a title report on the property prior to the commencement of the mortgage foreclosure action. That report identified Carol Hickey's lien and the fact that the lien was filed December 9, 1983, more than 7 months prior to the bank's filing of its mortgage interest.

Jacob Smith, an attorney, represented Peoples in the complaint for foreclosure of the mortgage. Prior to the entry of the final decree in the Hickey dissolution proceeding, Earl Patrick Hickey had consulted with Jacob Smith, who reviewed the property settlement agreement proposed by Carol's attorney and drafted a revision to the agreement.

On April 4, 1986, Peoples purchased the property at sheriff's sale at a bid price of $149,267.56, an amount which represented the bank's judgment and costs for foreclosure. In May 1986, the sale and all proceedings had in respect to the sale were confirmed by order of the superior court. In June 1987, a portion of the property was sold to a bona fide purchaser. Later, in November 1987, the remaining parcel was sold to a bona fide purchaser.

In January 1988, Carol Hickey filed a motion to set aside the decree of foreclosure. In her affidavit supporting her motion, she stated, in part:

> I have a high school education, but do not consider myself to be a sophisticated person and have very limited understanding of the law. . . . That at the time I was first served with the papers relating to this cause of action, I did not have any idea of what the word 'subordinate' meant.

The trial court denied Carol's motion to set aside the judgment, emphasizing that Carol had had ample opportunity to challenge the position of the bank that her lien was inferior to the bank's mortgage.

## CIVIL RULE 60(b)(4)

Carol Hickey seeks relief based upon the provisions of CR 60(b)(4), which reads:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

Motions for relief from a default judgment are commonly brought under CR 60(b)(1), which provides relief where the defaulting party can show a defense on the merits and that the default was entered because of mistake, inadvertence, surprise, or excusable neglect on the part of the defaulting party or irregularity in obtaining the judgment or order. *White v. Holm,* 73 Wn.2d 348, 352, 438 P.2d 581 (1968).[2] Hickey is precluded from using CR 60(b)(1), since motions under that provision must be brought within 1 year after entry of the order of default. Hickey brought her motion approximately 2½ years after the entry of the order of default and 27 months after entry of the decree of foreclosure.

---

[2]*White v. Holm, supra,* was based on language in former RCW 4.32.240 substantially similar to CR 60(b)(1).

■ A proceeding to vacate a default judgment is equitable in character, and relief is to be afforded in accordance with equitable principles. *White v. Holm, supra* at 351.

The issue here is whether Hickey is entitled to relief under CR 60(b)(4). Documents supporting Hickey's motion make a strong showing that the bank misrepresented the facts regarding Hickey's lien. We proceed on the assumption that her lien was superior to the bank's mortgage and had never been satisfied. It is immaterial whether the misrepresentation was innocent or willful. The effect is the same whether the misrepresentation was innocent, the result of carelessness, or deliberate. *Bros Inc. v. W.E. Grace Mfg. Co.*, 351 F.2d 208, 211 (5th Cir. 1965); *Plattner v. Strick Corp.*, 102 F.R.D. 612, 614 (N.D. Ill. 1984).

Default judgments are not favored in the law. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). The law prefers that controversies be determined on the merits rather than by default. *Griggs v. Averbeck Realty, Inc., supra* at 581.

Balanced against that principle is the necessity of having a responsive and responsible system which mandates compliance with judicial process and is reasonably firm in bringing finality to judicial proceedings. To now set aside the decree of foreclosure in favor of a person who slept on her rights for 2½ years would clearly undermine the salutary purposes served by finality of judgments.

Although Peoples misrepresented the status of Carol Hickey's lien, vacation of the default judgment and the decree of foreclosure is not warranted in this case.

■■ Fed. R. Civ. P. 60(b)(3) is the federal counterpart to CR 60(b)(4). Up to now, our cases have not confronted the precise issue presented here. However, when Washington statues or regulations have the same purpose as their federal counterparts, we will look to federal decisions to aid us in reaching the appropriate construction. *Fahn v. Cowlitz Cy.*, 93 Wn.2d 368, 376, 610 P.2d 857, 621 P.2d 1293

(1980). Courts interpreting the federal rule state that one who asserts that an adverse party has obtained a verdict through fraud, misrepresentation or other misconduct has the burden of proving the assertion by clear and convincing evidence. *Plattner v. Strick Corp., supra* at 614. The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect. For this reason, the conduct must be such that the losing party was prevented from fully and fairly presenting its case or defense. *Plattner v. Strick Corp., supra* at 615–16 (citing *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 421, 67 L. Ed. 719, 43 S. Ct. 458 (1923)); *Atchison, T. & S.F. Ry. v. Barrett,* 246 F.2d 846, 849 (9th Cir. 1957). Applying the above authorities to the facts at bar, we find vacation of the default judgment is not warranted. Although Peoples misrepresented the status of Hickey's lien, there is no connection between the bank's misrepresentation and Hickey's failure to respond to the complaint or employ an attorney. There is no evidence that Hickey relied on the misrepresentation or was misled by Peoples' statements in the complaint. Her affidavit asserts that she did not even know what "subordinate" meant. The misrepresentation having nothing to do with her failure to respond to the summons and complaint, Hickey cannot meet the requirement that the misrepresentation must have operated to prevent her from fully and fairly presenting her case.[3]

The judgment is affirmed.

WEBSTER, J., concurs.

PEKELIS, J. (dissenting)—I dissent. Default judgments are not favored under Washington law. *Griggs v. Averbeck Realty, Inc.,* 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). The majority acknowledges that the facts regarding Carol Hickey's lien were misrepresented. Nevertheless, it justifies upholding the default judgment by relying on *Plattner v.*

---

[3]We note the fact that the purchasers of the property from the bank were not joined as parties herein. We do not address the issue of whether they are necessary parties under CR 19 because of our resolution of the case on other grounds.

*Strick Corp.*, 102 F.R.D. 612 (N.D. Ill. 1984). In *Plattner,* the court held that Federal Rule of Civil Procedure 60(b)(3), which provides for setting aside judgments obtained through fraud, misrepresentation or other misconduct, requires the losing party to show that the fraudulent conduct prevented that party from fully and fairly presenting its case or defense. *Plattner,* 102 F.R.D. at 615–16.

*Plattner* is distinguishable, however. There, the fraud involved the plaintiff's allegedly false or "deliberately misleading" testimony at his deposition and at trial. *Plattner,* 102 F.R.D. at 614. The party challenging the judgment alleged that the plaintiff's testimony affected the fairness of the proceedings in that defense counsel developed his trial strategy based on erroneous assumptions about the facts. The *Plattner* court disagreed, concluding that even if the plaintiff had testified differently, "it would not 'have made a difference in the way [defendant's] counsel approached the case and prepared for trial.'" *Plattner,* 102 F.R.D. at 617 (quoting *Rock Island Bank & Trust Co. v. Ford Motor Co.,* 54 Mich. App. 278, 220 N.W.2d 799 (1974)).

In contrast, the misrepresentation in this case does not merely affect the "fairness" of the parties' relative positions at trial; rather, it affects the validity of the judgment itself. Peoples' counsel knowingly presented erroneous findings of fact which stated that Carol Hickey's lien was inferior or subordinate. These findings provided the legal basis for entry of the default judgment.[4] Had the trial court known that Carol Hickey's lien was superior to Peoples' lien, it would have, no doubt, refused to enter judgment against Carol Hickey without conducting a hearing to determine whether the lien had been satisfied. CR 55(b)(2). Thus, the

---

[4]In order to obtain a *judgment* of default, the moving party must present evidence to the court or commissioner which establishes its entitlement to the precise relief it seeks. CR 55(b). In contrast, a party may obtain an *order* of default without making any factual showing demonstrating its entitlement to the relief sought in the underlying complaint. The moving party need only establish proper service of the complaint and the motion for default, the absence of any response or appearance by the nonmoving party, and proper venue for the action. CR 55(a).

misrepresentation by Peoples' counsel subverted the integrity of the court itself:

> [T]ampering with the administration of justice . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.

*Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 246, 88 L. Ed. 1250, 64 S. Ct. 997 (1944), *overruled on other grounds in Standard Oil Co. v. United States,* 429 U.S. 17, 18, 50 L. Ed. 2d 21, 97 S. Ct. 31 (1976).

The conduct of Peoples' counsel, unlike that of the plaintiff in *Plattner,* also violated CR 11. CR 11 imposes on each attorney the obligation to sign every pleading he or she submits to the court. An attorney's signature on a pleading:

> constitutes a certificate by him that he has read the pleading . . .; that to the best of his knowledge, information, and belief, formed *after reasonable inquiry* it is well grounded in fact . . ., and that it is not interposed for any improper purpose . . .

(Italics mine.) CR 11. Thus, CR 11 is designed to prevent abuse of the courts and preserve the trustworthiness of the judicial process.

Here, Peoples' attorney clearly violated CR 11 when he submitted findings to the court which misrepresented the facts. The assertion by Peoples' counsel that he did not know Carol Hickey's lien was superior is disingenuous: the attorney representing Peoples in this matter was the same attorney who had created Carol Hickey's lien when he represented her former husband in their dissolution. In any event, Peoples' attorney points to no factual basis to support his assertion that Carol Hickey's lien was inferior. Indeed, a title search would have revealed otherwise.

Nor is Peoples' new contention on appeal that its counsel reasonably believed the lien had been satisfied credible. Counsel could have easily ascertained whether the lien had been satisfied merely by contacting Peoples' mortgagor, Earl Hickey, or Carol Hickey, or by referring to the title

report. This simple inquiry, required by CR 11, insures that attorneys, as officers of the court, honestly inform the tribunal of material facts which may affect the outcome of the controversy presented for judicial review. *See Miller v. Badgley*, 51 Wn. App. 285, 303, 753 P.2d 530 (1988) (attorneys may not avoid CR 11's requirement that they make a reasonable inquiry as to the factual basis for a motion "merely by claiming good faith conduct or personal ignorance of the groundless nature of a claim."),[5] *review denied*, 111 Wn.2d 1007 (1988).

Finally, Fed. R. Civ. P. 60(b)(3), interpreted in *Plattner*, is not "the federal counterpart" of Washington's CR 60(b), as the majority contends. Under Fed. R. Civ. P. 60(b)(3), motions must be made within a reasonable time, and not more than 1 year after the judgment was entered, even in cases where the judgment was allegedly obtained by fraud, misrepresentation or misconduct. In contrast, Washington's CR 60(b) requires that motions which challenge a judgment on the basis of fraud, misrepresentation, or misconduct of an adverse party be made within a "reasonable time." It is only motions challenging judgments on grounds such as mistake, excusable neglect, inadvertence, irregularity or error in the proceedings, or newly discovered evidence which must be made within 1 year of the entry of judgment. CR 60(b).

Thus, Washington's rule, unlike Fed. R. Civ. P. 60(b)(3), implicitly acknowledges that the judicial system's interest in prompt litigation and finality must yield to the more important requirement that judgments be obtained without fraud or misrepresentation. Here, the panel agrees that Peoples obtained its default judgment by misrepresenting to the court that Carol Hickey's lien was inferior and subordinate to its own. Although Carol Hickey's negligence in

---

[5]Arguably, counsel's conduct also violated RPC 3.3 which prohibits a lawyer from "knowingly" making a "false statement of material fact or law to a tribunal", and RPC 8.4 which prohibits attorneys from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation" and "in conduct that is prejudicial to the administration of justice". RPC 8.4(c), (d).

376

failing to respond to Peoples' complaint is not conduct this court wishes to condone, our concern with the "salutary purposes served by finality of judgments" pales in comparison to our duty to uphold the integrity of judicial proceedings. "Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants." *Hazel–Atlas,* 322 U.S. at 246. The majority's decision, in penalizing an inattentive litigant, rewards a party who, with the assistance of counsel, has obtained a favorable judgment through misrepresentation. I dissent.

Review denied at 113 Wn.2d 1029 (1989).