IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Parentage of: | ) | |
| | ) | No. 32585-7-III |
| E.L.C. | ) | |
| | ) | |
| DEBRA A. CROMER, | ) | |
| | ) | |
| Appellant, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS ALLAN THORN, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — We address whether writing the right number on the wrong line constitutes fraud in obtaining a judgment. When obtaining a default judgment against Thomas Thorn for child support, Debra Cromer erroneously listed Thorn's last known rate of pay under the "wages and salaries" line of the standard child support worksheet, rather than on the "imputed income" line.

One year and three months after entry of the default judgment, Thomas Thorn moved to vacate the default judgment. The superior court granted the motion on the ground that vacation of the default judgment was proper under CR 60(b)(4) because Debra Cromer engaged in fraud when obtaining the judgment. We reverse and reinstate

the default judgment for child support.

## FACTS

Debra Cromer and Thomas Thorn commenced a committed relationship in August 2008. Thorn is a physician. In March 2010, Cromer gave birth to the couple's daughter, E.L.C. On July 16, 2012, Debra Cromer suffered a black eye and head trauma during an altercation with Thorn. On July 17, 2012, authorities arrested and charged Thorn with domestic violence assault, felony harassment, and unlawful imprisonment. On July 19, Cromer procured a protection order against Thorn.

## PROCEDURE

On October 5, 2012, Debra Cromer filed a petition for a residential schedule, parenting plan, and child support for E.L.C. She served Thomas Thorn, then residing in jail, with the summons and petition through the Grant County Sheriff. On October 9, Thorn left jail on bail. Thorn never responded to Cromer's petition.

Debra Cromer moved for a default judgment against Thomas Thorn more than one month after Thorn left jail. On November 16, 2012, a court commissioner approved Cromer's proposed residential schedule and parenting plan. Due to Thorn's alleged willful abandonment of the child, refusal to perform parenting functions, and a history of acts of domestic violence, the commissioner limited Thorn's visitation to supervised visitation with E.L.C. every other weekend.

2

In a child support worksheet filed in support of her application for child support, Debra Cromer listed Thomas Thorn's gross monthly income as $13,000. She inserted this number, as being the wages and salary of Thorn, on line 1.a. of the "Gross Monthly Income" section of the worksheet. Clerk's Papers (CP) at 50. Cromer left blank line 1.f., a line devoted to imputed income, in this same section. Cromer should have listed the $13,000 figure as imputed income since she based the number on Thorn's past earnings as a physician. Cromer did not then know Thorn's current income. Cromer, however, declared, at the end of the worksheet, that she imputed Thorn's income because he was voluntarily unemployed or his income was unknown.

In the child support worksheet, Debra Cromer listed her own gross monthly income as $3,039.83 on line 1.c. under "Business Income." CP at 50. Cromer calculated that Thorn would be responsible for $1,585.08 per month in child support payments. In a section at the end of the worksheet titled "Other Factors for Consideration," Cromer wrote:

> The father's income is imputed as he is voluntarily unemployed and/or his income is unknown. He has been imputed based upon the last known rate of pay according to the petitioner which is at $75.00 per hour at full-time hours (40 hrs per week).

CP at 53.

A court commissioner entered an order directing Thomas Thorn to pay $1,585.08 in child support each month. Section 3.2 of the child support order stated:

3

The net income of the obligor is imputed at $9558.61 because:

the obligor's income is unknown.
The obligor is voluntarily unemployed.

The amount of imputed income is based on the following information in order of priority. The court has used the first option for which there is information:

Past earnings when there is incomplete or sporadic information of the parent's past earnings.

CP at 41.

Debra Cromer served Thomas Thorn with all final orders, including the child support order and order of default, on November 21, 2012. On August 27, 2013, a jury acquitted Thorn of the criminal charges against him. The jury found that Thorn employed lawful self-defense.

On January 6, 2014, Debra Cromer filed a petition to relocate E.L.C. from Grant County to Cheney, Washington, so that Cromer could attend Eastern Washington University. E.L.C. then approached her second birthday. Thorn had not exercised any visitation rights with E.L.C. and had only made one child support payment.

Thomas Thorn objected to Debra Cromer's petition to relocate. On March 27, 2014, Thorn also moved to vacate the orders entered against him in November 2012. Thorn alleged he defaulted on the initial petition because of a "state of duress" engendered by the charge of domestic violence, and, therefore, his lack of response constituted excusable neglect. CP at 181. Thorn offered no apologetic for why he failed

4

move to vacate the default following his acquittal in August 2013. Thorn declared that he was unemployed at the time of entry of the default orders. In his motion to vacate, Thomas Thorn does not disclose the amount of child support he believes the court should have ordered in November 2012. Thorn did not deny that, as of November 2012, his last known rate of pay was $75.00 per hour as declared by Debra Cromer in her child support worksheet filed in 2012.

In a declaration in support of Thomas Thorn's assertion of duress, Dr. Steven Juergens, a psychiatrist, stated that he had treated Thorn for major depression and attention disorder since August 2008. Juergens saw Thorn for a regular checkup on July 16, 2012, the date of Thorn and Debra Cromer's altercation, and, according to Juergens, Thorn "was doing well overall." CP at 184. Dr. Juergens treated Thorn again on November 29, 2012, a month after Thorn left jail. According to Juergens, Thorn, in late November, was devastated and depressed about his circumstances.

Dr. Steven Juergens continued in his declaration:

> I am writing because [Thorn] tells me that he is preparing a petition to address the default judgments that were granted to Debra Cromer on November 16, 2012. He has described to me that when, he was released on bail on October 9, 2012, after being jailed on July 16, 2012, that he was in a state of anguish and despair. He was not able to deal with his life circumstances, especially being served with child custody and support papers while he was in jail on October 5, 2012. These papers alleged willful abandonment, extended neglect, nonperformance of parenting functions and the lack of existence of emotional ties between him and his daughter. He recounted that he was facing 10 years in prison and describes himself as "quite literally was traumatized and in a daze."

5

. . . .

Though[] I did not see him during that time, I do believe that it is credible that Dr. Thorn was not dealing with his circumstances in a very organized and competent manner because of the emotional crisis being brought on by his being jailed for three months and the threat of facing years of prison. He describes himself as being depressed, anxious, angry, withdrawn, indecisive, and feeling helpless. He iterates to me that he was facing prison for something he did not do, threatened with not seeing his daughter again, the potential loss of his medical license, and the possibility of not working as a physician again. I do not believe that he was acting effectively at that time, which I think is understandable from a psychiatric standpoint.

CP at 184-85.

On April 18, 2014, a court commissioner denied Thomas Thorn's motion to vacate the default child support order. The commissioner entered detailed findings of fact, including:

11. More than one year has passed between entry and service of the orders entered by the court on November 16, 2012 and Respondent's Motion.
12. Respondent had the ability to bring a motion to vacate the default at all times after entry of the default.
13. Petitioner's allegations of domestic violence against Respondent did not prevent Respondent from answering the Summons and Petition.
14. Respondent's arrest and incarceration in 2012 did not prevent the Respondent from appearing and responding to the Summons and Petition.
15. Respondent's alleged "state of duress" did not prevent Respondent from appearing and responding to the Summons and Petition.
. . . .
18. Respondent did not file his Motion for an Order to Show Cause in this matter until after Petitioner filed her notice of relocation and motion for temporary orders.

CP at 234-35. The court commissioner also entered conclusions of law, including:

6

3. Respondent's Motion fails to provide any evidence of fraud, let alone clear, cogent and convincing evidence.

4. Respondent's Motion fails to establish fraudulent conduct on the part of the Petitioner.

5. Respondent's Motion fails to establish any fraud or misrepresentation that caused the entry of the November 16, 2012 orders, or that prevented the Respondent from fully and fairly presenting his case or defense.

CP at 226. The court commissioner awarded Debra Cromer attorney fees and costs in the amount of $2,619.

Thomas Thorn moved the superior court to revise the court commissioner's findings of fact, conclusions of law, and order denying his motion to vacate. Thorn added the argument that vacation of the default judgment was proper under CR 60(b)(5) or (11) because the judgment granted relief not requested in the petition, thereby rendering the judgment void and capable of being vacated at any time.

The Grant County Superior Court denied Thorn's request for relief under CR 60(b)(5) or (11). The trial court, nonetheless, vacated the default judgment under CR 60(b)(4) on the ground that Debra Cromer committed fraud in obtaining the judgment since she imputed income on the "Wages and Salaries" line of the child support worksheet instead of the "Imputed Income" line. In so ruling, the trial court noted that the one year limitation for moving to vacate a default judgment did not apply because of the fraud. The trial court upheld the default parenting plan.

7

LAW AND ANALYSIS

Default Order

Debra Cromer contends that the trial court erred in: (1) finding that Thomas Thorn made a prima facie showing that she fraudulently obtained the default judgment and order for child support, (2) failing to bar Thorn's motion to vacate as untimely, and (3) failing to consider the factors in *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968), in determining whether vacation of the default judgment was proper. We agree with her first assertion and so do not address the other two arguments.

This court reviews a trial court's decision on a motion to vacate an order of default or default judgment for abuse of discretion. *Morin v. Burris*, 160 Wn.2d 745, 753, 161 P.3d 956 (2007); *Yeck v. Dep't of Labor & Indus.*, 27 Wn.2d 92, 95, 176 P.2d 359 (1947). Discretion is abused if it is exercised on untenable grounds or for untenable reasons. *Morin*, 160 Wn.2d at 753. A trial court that misunderstands or misapplies the law bases its decision on untenable grounds. *Little v. King*, 160 Wn.2d 696, 703, 161 P.3d 345 (2007). We conclude that the trial court misapplied the law. The trial court based its decision on Debra Cromer allegedly providing false information to the trial court, rather than Cromer engaging in fraud to obtain the judgment, when a showing of procedural fraud or misrepresentation is needed to vacate a judgment under CR 60(b)(4).

Thomas Thorn contends that he provided sufficient evidence of fraud because Cromer knew that Thorn did not earn $13,000 per month, never earned that income, and

8

was incapable of employment as a physician when the order of child support was entered

on November 16, 2012. Thorn claims he was involuntarily unemployed due to the

actions of Cromer. We do not address these arguments because Thorn does not allege

that Cromer fraudulently prevented him from responding to the petition.

CR 60, upon which the trial court relied, applies to all judgments, not only

judgments obtained by reason of a default by the defendant. CR 60 provides, in relevant

part:

> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
> . . . .
> (4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> . . . .
> The motion shall be made within a reasonable time.

A review of case law shows that CR 60(b)(4) addresses fraud in procuring the

judgment rather than fraud or misrepresentation in providing false information to the

court at the time of entry of the judgment. Stated differently, CR 60(b)(4) concerns itself

with procedural, rather than substantive, fraud.

CR 60(b)(4) is aimed at judgments which were unfairly obtained, not at those

which are factually incorrect. *Peoples State Bank v. Hickey*, 55 Wn. App. 367, 372, 777

P.2d 1056 (1989). For this reason, a party seeking vacation of a judgment under CR

60(b)(4) must demonstrate that the fraud or misrepresentation caused the entry of the

9

judgment such that the losing party was prevented from fully and fairly presenting its case or defense. *Lindgren v. Lindgren*, 58 Wn. App. 588, 596, 794 P.2d 526 (1990); *Peoples State Bank v. Hickey*, 55 Wn. App. at 372; *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 421, 43 S. Ct. 458, 67 L. Ed. 719 (1923); *Atchison, Topeka & Santa Fe Ry. Corp. v. Barrett*, 246 F.2d 846, 849 (9th Cir. 1957); *Plattner v. Strick Corp.*, 102 F.R.D. 612, 615-16 (N.D. Ill. 1984). The alleged fraud or misrepresentation must be established by clear and convincing evidence. *Peoples State Bank v. Hickey*, 55 Wn. App. at 372.

*Peoples State Bank v. Hickey*, 55 Wn. App. 367 (1989) controls our decision. Carol Hickey appealed the trial court's denial of her motion to set aside a default judgment and a decree of foreclosure that were entered against her in favor of Peoples State Bank. Over a strenuous dissent, this court affirmed the judgment. The bank foreclosed on property owned by Hickey's former husband, but on which Hickey held a lien superior in interest to the interest of the bank. In the complaint, Peoples State Bank named Carol Hickey as a person claiming an interest in the mortgaged property. The bank falsely alleged that the interest of Carol Hickey was inferior, subordinate and subject to the lien of the bank. The bank then possessed a title report showing Hickey's lien to hold priority of the bank's mortgage. The bank served Hickey with the summons and complaint for mortgage foreclosure. Hickey failed to appear and an order of default was entered against her. Thereafter, Hickey sought to vacate the default judgment. She

averred that she possessed limited understanding of the law and that, when she received the summons and complaint, she was unaware of the meaning of the word "subordinate." The trial court denied Hickey's motion to set aside the judgment, emphasizing that she had ample opportunity to challenge the position of the bank that her lien was inferior to the bank's mortgage.

In *Peoples State Bank v. Hickey*, this court noted that Carol Hickey established that the bank misrepresented facts regarding Hickey's lien. We reasoned that it was immaterial whether the bank's misrepresentation was innocent or willful. Although default judgments are not preferred, balanced against that principle is the necessity of having a responsive and responsible system that mandates compliance with judicial process and is reasonably firm in bringing finality to judicial proceedings. We noted that Fed. R. Civ. P. 60(b)(3) was the federal counterpart to CR 60(b)(4) and we looked to federal decisions to reach the correct conclusion. Courts interpreting the federal rule stated that one who asserts that an adverse party has obtained a verdict through fraud, misrepresentation or other misconduct has the burden of proving the assertion by clear and convincing evidence. Thus, vacation of the default judgment was not warranted. Although Peoples State Bank misrepresented the status of Hickey's lien, there was no connection between the bank's misrepresentation and Hickey's failure to respond to the complaint or employ an attorney. Hickey did not rely on the misrepresentation, nor was she misled by the bank's statements in the complaint.

11

The trial court found that Thomas Thorn met his burden of proof under CR 60(b)(4) because Debra Cromer listed Thorn's gross monthly income as "wages and salaries" rather than as "imputed income" on the child support schedule worksheet she submitted to the court. We question whether Cromer misrepresented the facts when she elsewhere disclosed to the court commissioner that she did not know Thorn's income but was imputing income to him based on her latest information. We need not resolve, however, whether Cromer misrepresented facts or even fraudulently stated facts. Thorn did not rely on any misrepresentation. Debra Cromer's imputation of Thomas Thorn's income did not prevent him from appearing or fairly presenting his case.

Thomas Thorn claims that he went temporarily to jail due to the conduct of Debra Cromer and his jailing created duress that disabled him from answering the petition for child support. Nevertheless, he does not argue that his residing in jail is the type of fraud that qualifies for vacation under CR 60(b)(4). Anyway, Cromer did not seek the default judgment until Thorn's release from jail.

Attorney Fees and Costs

Debra Cromer requests appellate attorney fees and costs under RCW 26.09.140. That statute provides, in relevant part:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs

12

incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

In determining whether to award fees under RCW 26.09.140, this court examines the arguable merit of the issues on appeal, and the financial resources of the respective parties. *In re Marriage of King*, 66 Wn. App. 134, 139, 831 P.2d 1094 (1992). The party seeking fees on appeal must serve on the other party and file a financial affidavit, no later than ten days before the date the case is set for oral argument or consideration on the merits. RAP 18.1(c). Debra Cromer has fulfilled this requirement.

Debra Cromer brings a meritorious appeal. She shows minimal income. Thomas Thorn concedes in his response brief that he found employment in 2014. Therefore, he should be able to pay some or all of Cromer's attorney fees. We grant Cromer's request for attorney fees and costs in an amount to be determined by the commissioner of this court pursuant to RAP 18.1(d).

## CONCLUSION

We reverse the trial court's vacation of the order of default for child support, as well the findings of fact, conclusions of law, judgment, order for support/residential schedule, order granting attorney fees, and order of child support signed by the court commissioner in November 2012. We remand with instructions that the trial court reinstate the original default judgment and orders entered on November 16, 2012. We

13

No. 32585-7-III
*Cromer v. Thorn*

award appellate attorney fees and costs to Debra Cromer to be determined by our court commissioner.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.